STEPAK, APPELLEE, *v.* SCHEY ET AL., APPELLANTS.

[Cite as Stepak *v.* Schey (1990), 51 Ohio St. 3d 8.]

(No. 88-1940—Submitted November 21, 1989—Decided May 9, 1990.)

*Ulmer & Berne, Marvin L. Karp, Daniel A. Friedlander* and *Harvey Greenfield,* for appellee.

*Jones, Day, Reavis & Pogue, Patrick F. McCartan, John M. Newman, Jr., Katherine B. Jenks* and *Robert M. Duncan,* for appellants.

*Murray & Murray Co., L.P.A., Dennis E. Murray, Sr., Dennis E. Murray, Jr., John T. Murray* and *Kirk J. Delli Bovi,* urging affirmance for *amici curiae* Maureen Gergely et al.

MOYER, C.J. The issue presented by this appeal is whether a complaint alleging breach of fiduciary duty and challenging the price per share paid in

---

[1] Excluding the defendants and their immediate families.

a cash-out merger must be brought under R.C. 1701.85, the appraisal statute.

Plaintiff-appellee contends that "a claim that the directors of a corporation breached their fiduciary duty to obtain the best price obtainable for all of the shareholders when the company was being marketed for sale is not preempted by the appraisal statute, R.C. 1701.85."

For the reasons that follow, we hold that an action for breach of fiduciary duty may be maintained notwithstanding R.C. 1701.85; however, such action may not seek to overturn or modify the fair cash value determined in a cash-out merger.

In *Armstrong, supra,* one of the questions faced by this court was whether "R.C. 1701.85 is the exclusive means for the determination of the price that shall be paid for those shares held by dissenting shareholders." *Id.* at 421-422, 513 N.E. 2d at 798. The plaintiffs in *Armstrong* challenged the price offered for their shares, and alleged, *inter alia,* that "the board of directors and controlling shareholders * * * breached their fiduciary duties in connection with the initiation, timing, negotiation, structure, approval, etc., of * * * [the merger involved in that case]." *Id.* at 421, 513 N.E. 2d at 797. We held that the statutory proceeding under R.C. 1701.85 is the sole means for determining the value of a dissenter's share. We further commented that "this is not to say that causes of action which seek compensation other than the value of a dissenter's shares of stock are not maintainable. Provable injury under whatever theory asserted is compensable so long as it does not seek to overturn or modify the fair cash value determined. Such theory may not, however, be joined to the R.C. 1701.85 proceeding, but is a separate cause of

action subject to the applicable statute of limitations and *res judicata.*" *Id.* at 422, 513 N.E. 2d at 798.

We are asked here to determine whether that observation in *Armstrong* allows the maintenance of an action for breach of fiduciary duty outside the appraisal statute.

The *Armstrong* comment was predicated on *Radol* v. *Thomas* (C.A. 6, 1985), 772 F. 2d 244, certiorari denied (1986), 477 U.S. 903, wherein the court was faced with the question of whether the Marathon Oil Board of Directors breached its fiduciary duties to the shareholders by structuring the merger transaction between Marathon Oil and United States Steel in a way that preserved the board's control over Marathon Oil. *Id.* at 246. The *Radol* court recognized that an action for breach of fiduciary duty may be maintained outside the appraisal statute, R.C. 1701.85. *Id.* at 257.

Our decision in *Armstrong* recognizes that an action for breach of fiduciary duty may be brought outside the appraisal statute. This conclusion is in accord with our decision in *Johnson* v. *Lamprecht* (1938), 133 Ohio St. 567, 11 O.O. 297, 15 N.E. 2d 127, at paragraph three of the syllabus, and the decisions of other jurisdictions permitting nonstatutory remedies for fraud, *ultra vires* acts, illegality and breach of fiduciary duties. See *Walter J. Schloss Associates* v. *Chesapeake & Ohio Ry. Co.* (1988), 73 Md. App. 727, 738-739, 742, 536 A. 2d 147, 153, 155; *Mullen* v. *Academy Life Ins. Co.* (C.A.8, 1983), 705 F. 2d 971, 973-975; *Steinberg* v. *Amplica, Inc.* (1986), 42 Cal. 3d 1198, 1210-1211, 233 Cal. Rptr. 249, 256-257, 729 P. 2d 683, 691.

We next consider whether an action for breach of fiduciary duty, essentially alleging that the board of directors and executives of a company failed to obtain the highest possible price in a

cash-out merger, may be maintained outside the appraisal statute.

At the core of plaintiff's action for breach of fiduciary duty is the allegation that the price per share paid in the cash-out merger is inadequate because it is not the highest price that could have been obtained.

The appraisal statute, R.C. 1701.85, is designed to provide compensation for those shareholders who dissented from the merger. *Armstrong, supra,* at 403, 513 N.E. 2d at 782. It provides for the payment of fair cash value to a shareholder for his or her shares as of the day prior to the vote of the shareholders. Where there is an actual market for the identical stock to be appraised, such evidence controls the determination of fair cash value. From such amount there must be excluded either appreciation or depreciation if either is found to be present as a result of the proposal acted upon by the shareholders. *Id.* at 408, 513 N.E. 2d at 786. Thus in a merger situation, the board of directors' obligation to dissenting shareholders is the payment of fair cash value. There is no reason to consider, nor is the dissenting shareholder entitled to receive, any of the premium offered as consideration to those who in fact tendered their shares. *Id.* at 412, 513 N.E. 2d at 790.

As the majority in *Armstrong* observed at 422, 513 N.E. 2d at 798, an action for breach of fiduciary duty is maintainable outside the appraisal statute "so long as it does not seek to overturn or modify the fair cash value determined." In essence, we recognize that remedy beyond the statutory procedure is not available where the shareholder's objection is essentially a complaint regarding the price which he received for his shares. *Schloss Associates, supra,* at 748, 538 A. 2d at 158. Such valuation questions are the

traditional subjects of an appraisal. *Rabkin* v. *Phillip Hunt Chemical Corp.* (Del. 1985), 498 A. 2d 1099, 1105. The obvious benefit of this approach is that it makes more unlikely vexatious lawsuits by those whose goal is simply to receive more money for their stock. *Armstrong, supra,* at 409, 513 N.E. 2d at 788.

Plaintiff does not allege that his shares were undervalued. Rather, he alleges that he should have received more money for his shares. Plaintiff, in essence, challenges the value paid for his shares in the cash-out merger. Such action, merely asking for more money, per *Armstrong* must be brought under the appraisal statute, R.C. 1701.85.

The issue addressed by the concurring opinion, whether appellee brought his breach of fiduciary claims timely, was not addressed by the parties and is not an issue in this case.

For the foregoing reasons, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

SWEENEY and RESNICK, JJ., concur.

HOLMES and WRIGHT, JJ., concur in the syllabus and judgment.

DOUGLAS and H. BROWN, JJ., dissent.

HOLMES, J., concurring. I concur in the syllabus and judgment of the majority. However, I write separately in order to more fully develop what I perceive as the essentials needed in order to bring and maintain a breach of fiduciary action.

In Ohio, as in every other state, the long-established principle is that directors of a corporation have an obligation

to the corporation which is in the nature of that of a fiduciary. A director's obligation to the corporation includes two separate duties: loyalty and care. See ALI, Principles of Corporate Governance: Analysis and Recommendations, Introductory Note (Tent. Draft No. 4, Apr. 12, 1985), Part IV, at 4 (quoting the A.B.A.'s Corporate Director's Guidebook [1978], 33 Bus. Law. 1591, 1599-1600, on the distinction between the duty of loyalty and the duty of care). The formation of these duties is codified in R.C. 1701.59(B),[2] and under the duty of loyalty, a "director shall perform his [or her] duties as a director * * * in good faith, in a manner he [or she] reasonably believes to be in the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances." In evaluating a director's compliance with the duty of care, Ohio courts follow the "business judgment rule,"[3] and will

---

[2] R.C. 1701.59(B) was amended in 1986 after the activities complained of in this action took place; therefore, former R.C. 1701.59(B) has been construed.

R.C. 1701.59(B) was amended to give directors even greater deference in their corporate transactions, as evidenced by the language of the statute:

"A director shall perform his duties as a director, including his duties as a member of any committee of the directors upon which he may serve, in good faith, in a manner he reasonably believes to be in *or not opposed to* the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, that are prepared or presented by:

"(1) One or more directors, officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented;

"(2) Counsel, public accountants, or other persons as to matters that the director reasonably believes are within the person's professional or expert competence;

"(3) A committee of the directors upon which he does not serve, duly established in accordance with a provision of the articles or the regulations, as to matters within its designated authority, which committee the director reasonably believes to merit confidence." (Emphasis added.)

[3] Essentially, the business judgment rule allows for a noninterested director, exercising reasonable care and good faith judgment, to be protected from liability by deeming such decisions to be business judgments, not to be examined by the courts. See Committee on Corporate Laws, Section of Corporation, Banking and Business Law, American Bar Association, Corporate Director's Guidebook (1978), 33 Bus. Law. 1591, 1603-1604. The business judgment rule has also been recognized in Ohio case law. See, *e.g., Apicella* v. *PAF Corp.* (1984), 17 Ohio App. 3d 245, 247, 17 OBR 512, 515, 479 N.E. 2d 315, 318; *Gruber* v. *Chesapeake & O. Ry. Co.* (N.D. Ohio 1957), 158 F. Supp. 593, 603.

In addressing the business judgment rule in the context of "lock-up options," there is no question that outside the scope of contest for corporate control, the board of directors of an Ohio corporation has the authority to grant an option to acquire either the company's stock or any of the company's assets. See *Mobil Corp.* v. *Marathon Oil Co.* (S.D. Ohio Dec. 7, 1981), Fed. Sec. L. Rep. (CCH), Paragraph 98,375, at 92,284, reversed on other grounds (C.A.6, 1981), 669 F. 2d 336; *Cottle* v. *Storer Communication, Inc.* (C.A.11, 1988), 849 F. 2d 570, 574 (the Eleventh Circuit Court of Appeals held that under Ohio law the board's decisions to enter into a merger agreement and to grant an asset lock-up option were protected by the business judgment rule in the absence of a showing of fraud, bad faith or an abuse of discretion on the part of the directors). Both *Cottle* and *Mobil* illustrate the general proposition that lock-ups in a takeover

not usually inquire into the wisdom of actions taken by the director in the absence of fraud, bad faith or abuse of discretion. See *Radol* v. *Thomas* (C.A.6, 1985), 772 F. 2d 244, certiorari denied (1986), 477 U.S. 903; *Ohio Natl. Life Ins. Co.* v. *Struble* (1948), 82 Ohio App. 480, 485, 81 N.E. 2d 622, 625, appeal dismissed (1948), 150 Ohio St. 409, 82 N.E. 2d 856; see, also, *Worth* v. *Huntington Bancshares, Inc.* (1989), 43 Ohio St. 3d 192, 540 N.E. 2d 249. Furthermore, R.C. 1701.59(B) and (C) provide in part that a director shall not be liable for a breach of fiduciary duty unless a party can show that the director failed to act in good faith, in a manner he or she reasonably believed to be in the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would have used under similar circumstances. See, also, *Apicella* v. *PAF Corp.* (1984), 17 Ohio App. 3d 245, 247, 17 OBR 512, 515, 479 N.E. 2d 315, 318; *Gruber* v. *Chesapeake & Ohio Ry. Co.* (N.D. Ohio 1957), 158 F. Supp. 593, 603 ("In the absence of usurpation, fraud, or gross negligence, courts of equity will not interfere at the suit of a dissatisfied minority of shareholders, merely to overrule and control discretion of the directors on questions of corporate management, policy or business."); *Norlin Corp.* v. *Rooney, Pace, Inc.* (C.A.2, 1984), 744 F. 2d 255, 264-265; see, generally, 3A Fletcher, Cyclopedia of the Law of Private Corporations (1986 Rev.) 45-46, Section 1039. See *Worth* v. *Huntington Bancshares, Inc., supra.*

In 1986, the General Assembly enacted amendments to R.C. 1701.59 and 1701.60 in order to significantly increase the protection afforded to corporate directors. The purpose behind the adoption of these amendments was "to make it clear that a director has the benefit of a presumption that he [or she] is acting in good faith and in a manner he [or she] reasonably believes is in (or not opposed to) the best interests of the corporation in all cases, including those affecting or involving a change in control or a termination of his [or her] services. It is believed that the changes are necessary because of the adoption by some courts, notably those of Delaware, of the view that, in such cases, the director becomes an interested party and, as a result, loses the benefit of the business judgment rule." 1986 Commentary, OSBA Corporation Law Committee (quoted in Burton & Rich, Ohio Corporation Law & Practice [1989] 109, Section 6.4).

As the majority opinion points out, a director is not shielded by the business judgment rule where fraud, *ultra vires* acts, illegality and breach of fiduciary duties are alleged and proven. This court held in *Armstrong* v. *Marathon Oil Co.* (1987), 32 Ohio St. 3d 397, 422, 513 N.E. 2d 776, 798, that "the statutory proceeding under R.C. 1701.85 is the sole means for determining the value of a dissenter's shares * * *, this is not to say that causes of action which seek compensation other than the value of a dissenter's shares of stock are not maintainable. Provable injury under whatever theory utilized is compensable so long as it does not seek to overturn or modify the fair cash value determined."

In discussing who are the proper parties to an appraisal proceeding, the federal district court's analysis in

---

situation are not, *per se, ultra vires.* However, lock-ups may be deemed unlawful if it can be shown that in granting such options, a target company's directors failed to exercise due care after reasonable investigation or acted in pursuit of their own self-interest rather than that of the corporation and its shareholders.

*Radol* v. *Thomas* (May 17, 1983), S.D. Ohio No. C-1-82-13, unreported, for same case on appeal, see (C.A. 6, 1985), 772 F. 2d 244, certiorari denied (1986), 477 U.S. 903, correctly noted the difference between actions brought by dissenting shareholders (*i.e.,* shareholders dissatisfied with the outcome of the merger vote) and those actions where injured parties are "seeking relief simply as shareholders * * * [of] a company, whose directors, they allege, breached their duty to *all* shareholders * * *." Essentially, the distinction is between challenges to the structure of the transaction and dissent from the merger vote itself. The appraisal remedy is exclusive only with respect to the latter. Thus, where a director occupies a fiduciary position in connection with the structuring of a transaction, appraisal under certain circumstances may not be the exclusive remedy for the aggrieved shareholders. *Id.* at 16-17.

It is well recognized that directors of a corporation occupy a fiduciary relationship to the corporation and its shareholders and are held strictly accountable and even liable if corporate property or funds are wasted or mismanaged due to their inattention to the duties of their trust. Consequently, "[w]hen a director breaches his duty of trust and benefits at the expense of the corporation, under Ohio law the director is liable for any profits he received. It matters not that the director acted absent *actual fraudulent intent;* as long as the director places himself in a position of conflicting loyalties and subsequently violates his primary obligation to the corporation, liability attaches." (Emphasis added.) *Ohio Drill & Tool Co.* v. *Johnson* (C.A.6, 1980), 625 F. 2d 738, 742; see, also, *Ohio Drill & Tool Co.* v. *Johnson* (C.A.6, 1974), 498 F. 2d 186, 191-192; *Seagrave Corp.* v. *Mount* (C.A.6, 1954),

212 F. 2d 389, 397; *Neinaber* v. *Katz* (1942), 69 Ohio App. 153, 43 N.E. 2d 322.

In shareholder actions alleging the breach of fiduciary duties, "the general rule * * * [is] that directors carry the burden of showing that a transaction is fair and in the best interests of shareholders only *after* the plaintiff [or aggrieved shareholder] has made a prima facie case showing that the directors have acted in bad faith or without the requisite objectivity." *Radol* v. *Thomas, supra* (772 F. 2d), at 257; *Norlin Corp.* v. *Rooney, Pace, Inc., supra,* at 264; ALI, Principles of Corporate Governance, *supra,* at 6, 11, Section 4.01 (protections of business judgment rule removed only if a challenging party can sustain his burden of showing the director was not acting in good faith or with disinterest, or was not informed as to the subject of his business judgment).

Under Ohio law, directors may not, in breach of their fiduciary duties, act unfairly to the disadvantage of their corporation or its shareholders. Accordingly, within the bidding process of a corporate takeover or merger, the directors may not rig, control or stifle such bidding to their own advantage. However, unlike one of the arguments of the complaining shareholder here, the directors are not held to a duty to the shareholders to obtain, like an auctioneer, the highest price possible for their shares of the corporation. The law of the state of Delaware to that effect as pronounced in *Revlon, Inc.* v. *MacAndrews & Forbes Holdings, Inc.* (Del. 1986), 506 A. 2d 173, is not applicable in Ohio.

In addressing the facts in the case *sub judice,* I conclude that Stepak has sufficiently stated a cause of action for breach of fiduciary duties by the appellants. However, I believe that Stepak's untimeliness in asserting cer-

tain claims and his failure to request the proper remedy as to other claims precludes his recovery.

As noted previously, in *Armstrong,* this court stated in the opinion that there could be separate actions filed by dissenting shareholders in addition to that provided under R.C. 1701.85(C), which section provides for the determination of "fair cash value." Among the remedies outside R.C. 1701.85 available to an aggrieved shareholder who brings an action for breach of fiduciary duties is the disgorgement of any profits resulting from the breach.[4] See *Ohio Drill & Tool Co., supra* (625 F. 2d), at 742; *Ohio Drill & Tool Co., supra* (498 F. 2d), at 191. Another conceivable action available to the aggrieved shareholder prior to the proposed merger would be an action to enjoin the merger, with an attendant claim for any damages suffered by the shareholder. Here, there was no such action filed by the complaining shareholder. Also, subsequent to the merger, an action for rescission of the merger and/or appropriate damages may be brought by the shareholder if the merger, and acts of the officers and directors leading to such, were unlawful, *ultra vires,* or fraudulent as to the corporation or its shareholders, and where there has been nondisclosure of pertinent facts concerning the merger. Here, the complaint does not allege that the merger was unlawful or *ultra vires,* nor are there allegations sufficient to establish actual fraud or non-disclosure of facts pertinent to the merger.

The allegations of the amended complaint, in the main, allege a breach of fiduciary duties by the officers and directors of Scott & Fetzer to the corporation and its shareholders. Any such action brought by the shareholder against the corporation and its officers and directors should only be countenanced prior to the consummation of the merger. Such an action, as here, does in fact seek more than a determination of the fair cash value as provided in R.C. 1701.85(C), and as construed by the court in *Armstrong.* However, to allow an action claiming breach of fiduciary duty, subsequent to a merger, where there has been no prior action to enjoin a merger nor a proceeding pursuant to R.C. 1701.85, nor a showing of unlawfulness, *ultra vires* acts, fraud, or non-disclosure would result in defeating the statutory purpose and intent of Ohio's corporate takeover and merger chapter. Therefore, I would concur in the syllabus and judgment of this opinion.

WRIGHT, J., concurs in the foregoing concurring opinion.

H. BROWN, J., dissenting. The majority construes the complaint as "merely asking for more money" and finds that it must be brought in an R.C. 1701.85 appraisal proceeding. That construction ignores the allegations in the complaint before us, which charge self-dealing and breach of fiduciary duty. The rule adopted by the majority would leave shareholders without a remedy where management, in breach of its fiduciary duty, eliminates a potential buyer (or potential buyers)

---

[4] R.C. 1701.59(D) now provides that unless the corporation's articles or regulations specifically provide that subsection (D) does not apply to the corporation, monetary damages will not be imposed upon a director unless there is clear and convincing proof that the director's act or omission to act was undertaken with deliberate intent to cause injury to the corporation or with a reckless disregard for the best interests of the corporation.

who would pay more than that received from the offer favored by management.

Plaintiff alleged that certain officers and directors of Scott & Fetzer Company ("defendants") engaged in self-dealing and breached their fiduciary duty to shareholders by structuring the merger with Berkshire Hathaway, Inc. for their own benefit. He claimed that defendants: (1) granted a lock-up option to Berkshire prior to entering the merger agreement, to acquire Scott & Fetzer shares at a set price, and (2) determined that the merger transaction constituted "a change in control" so as to trigger golden parachute agreements by which certain executive officers received $30,000,000 in benefits, at the expense of shareholders. Thus, defendants allegedly blocked competitive bidding to benefit themselves and to prevent shareholders from realizing a premium for selling their shares to the highest bidder. Plaintiff prayed, *inter alia,* that the court declare that defendants breached their fiduciary duty to shareholders and grant him compensatory and rescissionary damages.

The majority finds that plaintiff's action *must be brought* under the appraisal statute (R.C. 1701.85) since it challenges the value paid in the cash-out merger. The majority fails to recognize the dynamics of corporate acquisitions. If corporate management engages in a bid-rigging scheme which deprives shareholders of a premium over market price, a complaint cannot be made *without* challenging the price paid for the stock. But, dissatisfaction with the price paid does not automatically convert the action to a simple demand for the "fair cash value" of a stockholder's shares. Here, the complaint clearly charges that the directors failed in their duty to obtain the best price possible for the sale of shares.

When a company goes into "play," potential acquiring companies generally bid more than the market price for a company's shares.[5] Thus, the best obtainable price for the shares cannot be equated to "fair cash value." The directors owe a duty to the shareholders to obtain the highest price for the shares. See *Revlon, Inc.* v. *MacAndrews & Forbes Holdings, Inc.* (Del. 1986), 506 A. 2d 173, 184. The role of the directors becomes that of " '* * * auctioneers charged with getting the best price for the stockholders at a sale of the company.' " *Edelman* v. *Fruehauf Corp.* (C.A.6, 1986), 798 F. 2d 882, 887. The directors must allow the market to operate freely. Plaintiff's contention (which for the purpose of this appeal we are obligated to accept as true) is that instead of allowing the market to operate freely, the defendants actively interfered in it, thereby breaching their fiduciary duty to shareholders. The majority does not recognize this duty of directors to shareholders. Cf. *Crosby* v. *Beam* (1989), 47 Ohio St. 3d 105, 548 N.E. 2d 217 (relating to claims of breach of fiduciary duty in close corporations).

The statutory appraisal proceeding provides no remedy for shareholders deprived of the best offer for their shares when self-dealing directors make a sale at fair cash value or better. R.C. 1701.85 sets forth the

---

[5] An example illustrates my point. On January 25, 1988, Campeau Corporation of Canada made a hostile tender offer of $47 a share for Federated Department Stores Inc. After the offer, Federated shares rose from just under $36 to $49.

R. H. Macy & Company entered the contest, sparking a bidding war. About ten weeks later, Federated finally accepted Campeau's offer of $73.50 a share. (New York Times, April 2, 1988, at 1, col. 1.)

procedure by which a shareholder may dissent from a proposed merger and obtain the "fair cash value" for his or her shares. Under Subsection (C), the fair cash value of a share is its market value *excluding any appreciation in value resulting from the merger proposal.*[6] Had plaintiff pursued his action via appraisal, he would not have received *any* premium over market price. *Armstrong* v. *Marathon Oil Co.* (1987), 32 Ohio St. 3d 397, 410, 513 N.E. 2d 776, 788 ("The valuation remedy clearly is a remedy that does not give dissenting shareholders any element of value attributable to the transaction from which they have dissented."). Where the opportunity to obtain a premium price for sale of shares is destroyed by self-dealing officers of a corporation, there should be a remedy. Unfortunately, the majority's holding eliminates the possibility of remedy for that wrong.

Further, causes of action (such as an action for breach of fiduciary duty) which seek compensation other than the value of a dissenter's shares *must* be brought outside the appraisal statute. *Armstrong, supra,* at 422, 513 N.E. 2d at 798.

As noted by the court of appeals, "[a] statutory appraisal proceeding and a rescissory suit for fraud, misrepresentation, self-dealing and other actionable wrongs to shareholders serve different purposes and should provide different remedies. See *Rabkin* v. *Philip A. Hunt Chem. Corp.* (Del. 1985), 498 A. 2d 1099, 1106 (unfair dealing claims based upon breaches of fiduciary duties raise 'issues which an appraisal cannot address'); *Weinberger* v. *UOP, Inc.* (Del. 1983), 457 A. 2d 701, 714 ('[t]he appraisal remedy * * * may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved')."

The majority fails to perceive the distinction between a limited attack on the failure to obtain fair cash value for shares and a charge of unfair dealing which results in elimination of the highest and best purchaser. I would affirm the decision reached by the court of appeals.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

---

[6] R.C. 1701.85 provides in relevant part:

"(C) * * * The fair cash value of a share for the purposes of this section is the amount that a willing seller, under no compulsion to sell, would be willing to accept, and that a willing buyer, under no compulsion to purchase, would be willing to pay, but in no event shall the fair cash value of it exceed the amount specified in the demand of the particular shareholder. *In computing such fair cash value, any appreciation or depreciation in market value resulting from the proposal submitted to the directors or to the shareholders shall be excluded.*" (Emphasis added.)