HOWING COMPANY; Douglas McLellan, Plaintiffs–Appellants,

v.

NATIONWIDE CORPORATION; Nationwide Mutual Insurance Company, Defendants–Appellees.

No. 89–4084.

United States Court of Appeals, Sixth Circuit.

Reargued March 31, 1992.

Aug. 17, 1992.

Rehearing and Rehearing En Banc Denied Nov. 4, 1992.

William R. Jacobs (argued and briefed), Strauss & Troy, Cincinnati, Ohio, for plaintiffs-appellants Howing Co. and Douglas McLellan.

Frederick J. McGavran, Frost & Jacobs, Cincinnati, Ohio, Jeffrey S. Davidson (argued and briefed), Kirkland & Ellis, Los Angeles, Cal., for defendants-appellees Nationwide Corp. and Nationwide Mut. Ins. Co.

Before: MERRITT, Chief Judge; GUY, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This securities action brought by minority public shareholders of Nationwide Corporation arises from a freeze-out merger of Nationwide Corporation with a parent corporation, Nationwide Mutual Insurance Company, which, with another parent, Nationwide Mutual Fire Insurance Company, immediately prior to the merger owned approximately 85% of the shares of the subsidiary. We previously reversed the district court's dismissal of the minority shareholders' claims that the Defendants issued a proxy statement that violated SEC Rule 13e–3 and breached their state-law fiduciary duties to the minority shareholders. We then remanded the case for further proceedings consistent with our opinion. *See Howing Co. v. Nationwide Corp.*, 826 F.2d 1470 (6th Cir.1987).

Upon remand, concluding that the omitted Rule 13e–3 disclosures were not material and that the Defendants did not breach state-law fiduciary duties, the district court again granted summary judgment for the Defendants. The minority shareholders again appealed to this court, and we again reversed and remanded. We concluded that the nondisclosures were presumptively material and that the minority shareholders had supported a state-law breach-of-fiduciary-duty claim. *See Howing v. Nationwide*, 927 F.2d 263 (6th Cir.1991).

The Supreme Court then granted the Defendants' application for certiorari. The Court vacated the judgment of this court and remanded for reconsideration in light of its intervening decision in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. ——, 112 S.Ct. 39, 116 L.Ed.2d 18 (1991). For the reasons that follow, we again reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

Nationwide Corporation, a large life insurance holding company, had two classes of outstanding stock. Until the late 1970's, the public held the Class A common stock. Two Nationwide parent companies, Nationwide Mutual Fire Insurance Company ("Nationwide Fire") and Nationwide Mutual Insurance Company ("Nationwide Mutual"), held all of the Class B common stock.

A. The Underlying Facts

The two classes of stock shared voting rights in such a way that complete ownership of Class B gave Nationwide Mutual

and Nationwide Fire effective control of Nationwide Corporation. During December of 1978, Nationwide Mutual and Nationwide Fire began to eliminate public ownership of Nationwide Corporation. They made a tender offer to buy and bought some of the Class A shares for $20 per share net in cash. After the tender offer, they continued to purchase Class A shares in the open market, at prices ranging from $22.50 to $24.62 per share. Nationwide Mutual and Nationwide Fire thereby acquired ownership of 85.6% of the Class A stock.

During November of 1982, Nationwide Corporation's board of directors approved a freeze-out transaction in which Nationwide Mutual and Nationwide Fire would acquire the remaining Class A shares for $42.50 per share. Because its parents owned over eighty-five percent of its stock, and shareholder approval required the favorable vote of only a majority, the outcome of the shareholder vote was a foregone conclusion. The transaction, which eliminated all public ownership of Nationwide Corporation, was approved by the favorable vote of 94.7% of the Class A shares.[1]

## B. The Ensuing Litigation

Prior to the vote on the proposed merger, Belle Efros, a Nationwide Corporation shareholder, sought a preliminary injunction barring the vote. Following denial of the injunction and the shareholders' approval of the merger, two former Nationwide Corporation shareholders, the Howing Company and Douglas McLellan, brought this action. The district court denied class certification in the *Efros* action. It later, however, conditionally certified the *Howing–McLellan* action as a class action and consolidated it with the *Efros* action. The

class certified included all holders of Class A stock except Nationwide Mutual and those it controlled.

The final amended complaint stated claims under, *inter alia*, § 13(e) of the Securities Exchange Act of 1934 and under state law based upon a breach of fiduciary duty. During the November, 1982 freeze-out transaction, Nationwide Corporation had issued a proxy solicitation. When the Nationwide Defendants later sought summary judgment, the district court identified the proxy solicitation's compliance with Rule 13e–3 as the principal issue in this case. It held that the proxy solicitation satisfied Rule 13e–3 and that any omissions were not material.

Additionally, the district court rejected the Plaintiffs' state-law claims. It held that statutory appraisal constituted the Plaintiffs' exclusive state-law remedy. Noting the Plaintiffs' failure even to assert the appraisal remedy, the district court dismissed the complaint.

### 1. *Howing I:* The First Appeal to the Sixth Circuit

The class Plaintiffs, but not Belle Efros, appealed. We reversed the judgment of the district court and remanded the case. *See Howing Co. v. Nationwide Corp.*, 826 F.2d 1470 (6th Cir.1987) (hereinafter *"Howing I"*).

We first held that a private right of action for damages exists under § 13(e) of the Securities Exchange Act of 1934. We next discussed compliance with Rule 13e–3, 17 C.F.R. § 240.13e–3, a rule, promulgated under § 13(e), that prescribes the form and content of the disclosures that must be given to shareholders in going-private transactions such as the one under consid-

---

1. Near the time of the announcement of the merger, November 19, 1982, Nationwide Corporation had 4,777,437 Class A shares outstanding. Nationwide Mutual owned or controlled 4,091,-892 shares, or about 85.6% of the total. Approximately 4,000 public shareholders of record owned the remaining 685,545 shares, which constituted about 14.4% of the total outstanding.

The merger was approved by the favorable vote of 94.7% of the Class A shares, or approximately 4,524,233 shares. The deduction of the

4,091,892 shares owned or controlled by Nationwide Mutual, which obviously were voted in favor of the merger, indicates that approximately 432,341 of the shares held by the 4,000 public shareholders were voted in favor of the merger. The remaining 253,304 shares held by the 4,000 public shareholders were voted against the merger or were not voted. The 1,361 shares held by the Howing Company and the 2,324 shares held by McLellan were among the shares that were not voted.

eration. Rule 13e–3 mandates that certain parts of the issuer's Schedule 13E–3, a document that must be filed with the SEC during going-private transactions, be disclosed verbatim in the proxy solicitation.

The instructions to Item 8 of Schedule 13E–3, 17 C.F.R. § 240.13e–100, require a statement as to the fairness of the transaction and the factors upon which such belief is based. In considering the Defendants' compliance with Rule 13e–3, we first noted that conclusory statements that the transaction is fair in relation to net book value, going-concern value, and future prospects fail to satisfy the Rule. Noting that the Rule requires a high level of specificity, we concluded that the Nationwide Defendants had made just the sort of conclusory statements prohibited by the Rule; they provided only a laundry list of factors considered by the investment banker, which the Defendants had employed to render an opinion as to the fairness of the transaction. In *Howing I*, we concluded that the Rule requires a "reasonably detailed analysis of the various financial valuation methods discussed by the Rule and the weights attached thereto." *Howing I*, 826 F.2d at 1479. Because the proxy statement failed to provide a reasonably detailed analysis applying the various valuation methods and the weights attached thereto, we found that the Defendants failed to comply with the disclosure obligations imposed by Rule 13e–3. *Id.*

We also reversed the district court's determination that, "since there is no evidence of any breach of fiduciary duty owed by the defendants, and the merger was neither unauthorized by statute, illegal nor ultra vires under Ohio corporation law, the Ohio statutory appraisal right constituted the plaintiffs' exclusive state law remedy." *Id.* at 1474. We remanded the case, instructing the district court (1) to reconsider the Defendants' failure to provide the information required by the instructions to Item 8 of Schedule 13E–3; (2) to consider issues of materiality of the Defendants' omissions under Rule 13e–3; and (3) to decide the state-law breach-of-fiduciary-duty claims and, if necessary, make detailed findings of fact and conclusions of law concerning the claim asserted under the state standard of fiduciary duty. We denied the Defendants' petition for rehearing and suggestion for rehearing en banc. The Supreme Court denied the Defendants' petition for certiorari.

### 2. The District Court's Second Judgment in Favor of the Defendants

Upon remand, the district court again granted summary judgment in favor of the Defendants. Although the Defendants had, as we had determined, failed to discuss in reasonable detail the net book, going-concern, or liquidation value, or the weights attached thereto in arriving at their fairness opinion, the district court found that such a discussion would not have provided a shareholder with information that was material under the standard set forth in *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). *TSC* states that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC*, 426 U.S. at 449, 96 S.Ct. at 2132. The district court also concluded that, because of the "extraordinary" procedural steps taken to safeguard the interests of the public shareholders, the Defendants violated no state-law fiduciary duty.

### 3. *Howing II:* The Second Appeal to the Sixth Circuit

After the district court's second judgment in favor of the Nationwide Defendants, the Plaintiffs again appealed to this court. *See Howing Co. v. Nationwide Corp.*, 927 F.2d 263 (6th Cir.1991) (hereinafter "*Howing II*"). We first considered the district court's conclusion that the omission of the disclosures required by Rule 13e–3 did not meet the *TSC* standard of materiality. Agreeing with the district court that the *TSC* standard of materiality applied to Rule 13e–3 transactions, we held that:

the clear and specific language of the instructions to Item 8 creates in effect a presumption that a discussion of book, going concern and liquidation value in the proxy statement would be material to

a reasonable shareholder. The presumed fact—that the investor would likely find disclosure of such information significant—follows from Item 8's insistence that the information be stated.

*Howing II,* 927 F.2d at 265. We then held that the Defendants had not rebutted this presumption, and therefore, we reversed the district court's grant of summary judgment in their favor.

Additionally, we considered the Plaintiffs' state-law breach-of-fiduciary-duty claims. We first held that the only arguable Ohio-law claim is against Nationwide Mutual in its capacity as majority shareholder of Nationwide Corporation.[2] We next noted that, under Ohio law, although a majority shareholder may have a right to "cash out" the minority shareholders for any reason, the majority shareholder has a fiduciary duty to pay a "fair" price and *fully disclose all relevant facts about the value of the corporation whose stock it is buying.* The Defendants' failure to disclose all relevant information regarding valuation, we held, supports a state-law breach-of-fiduciary-duty claim against Nationwide Mutual. We, therefore, also reversed the district court's grant of summary judgment for the Defendants on the state-law breach-of-fiduciary-duty claim. We remanded the case to the district court for trial of both claims.

### 4. The Supreme Court's Remand to the Sixth Circuit

After *Howing II,* the Defendants sought review in the Supreme Court. The Court granted certiorari, vacated our judgment, and remanded the case for reconsideration in light of an intervening precedent, *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).

### II.

*Virginia Bankshares,* a five to four decision, presented two issues to the Supreme Court. The first was the materiality of the claimed deficiencies in the proxy statement. The Court's resolution of that issue in no way undercuts our prior materiality determination in this case. The second issue was causation of damages to minority stockholders by the defective proxy statement. Justice Souter's majority opinion first discussed the Court's previous consideration of the causation issue in the context of the implied private right of action arising under § 14(a) of the Securities Exchange Act of 1934. It summarized *Mills v. Electric Auto–Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), which involved a merger where the majority shareholder controlled half the stock, but needed the votes of two-thirds to gain approval. After issuing a materially misleading proxy solicitation, · the majority shareholder obtained approval by the necessary two-thirds. Proof that individual affirmative votes sufficient to alter the outcome were cast in reliance upon the misstatement and would have been cast against it given full and fair disclosure, the *Mills* court noted, would have presented an evidentiary morass of epic proportions. ·

The *Mills* Court avoided this evidentiary morass. It held that one could establish causation of damages by a materially misleading proxy solicitation by showing that minority votes necessary and sufficient to authorize the transaction had been given in accordance with the tenor of the solicitation. The Court concluded that, given a finding of materiality, a shareholder need only prove that the proxy solicitation was an essential link in the accomplishment of the transaction. *Mills,* 396 U.S. at 385, 90 S.Ct. at 622.

### A. The *Schlick* Theory

Unlike the Court in *Mills,* the *Virginia Bankshares* Court had before it the claims of minority shareholders whose votes were not necessary for the authorization of the transaction. In the *Virginia Bankshares* decision, the majority rejected the first of the minority shareholders' two theories of

---

**2.** The Plaintiffs did not sue the directors of Nationwide Corporation. *See Howing II,* 927 F.2d at 267.

causation.[3] The first theory, similar to one adopted by the Second Circuit in *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.1974), was that the directors' desire to avoid minority shareholders' ill will by use of a misleading proxy solicitation should provide the causal nexus between the proxy statement and the merger. (Hereinafter, "the *Schlick* theory"). The theory draws support from the premise that, in the face of an unfavorable minority shareholder vote, a board of directors might well choose not to go forward with a transaction—even though the majority shareholder had the raw voting power to authorize the transaction. The Court rejected this theory because it would give rise to speculative claims and procedural intractability. "Causation would turn on inferences about what the corporate directors would have thought and done without the minority shareholder approval unneeded to authorize action." *Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2764–65, 115 L.Ed.2d at 953–54.

### B. The Loss-of-State-Law-Remedy Theory

The minority shareholders in *Virginia Bankshares* derived their second theory of causation from Virginia's law of postmerger ratification. They noted that minority approval, though unneeded to authorize the transaction, would preclude a minority suit attacking the merger based on the alleged conflict of interest on the part of a director of the merged corporation. They argued that causation should be recognized when a misleading proxy statement induces minority shareholders to forfeit such a state-law remedy.

The Court in *Virginia Bankshares*, although not rejecting this theory, declined to decide its merits. The Court found that "there is no indication in the law or facts before us that the proxy solicitation resulted in any such loss [of the state law remedy]," *Virginia Bankshares*, 501 U.S. at

——, 111 S.Ct. at 2765–66, 115 L.Ed.2d at 954–55, because a favorable minority vote *induced by a materially misleading proxy solicitation* would not, under Virginia law, render the transaction invulnerable to such later attack by the minority.[4]

### III.

The Supreme Court's remand for reconsideration in light of *Virginia Bankshares* raises two issues relevant to causation. The first is whether the *Virginia Bankshares* analytical framework applies to this claim, which, unlike *Virginia Bankshares*, arises under § 13(e), not § 14(a). The second is whether, assuming the *Virginia Bankshares* analytical framework applies, the Plaintiffs have asserted and supported an acceptable theory of causation.

### A. The Applicability of the *Virginia Bankshares* Analytical Framework

■ Defendants acknowledge that *Virginia Bankshares* arose under § 14(a), while this case arises under § 13(e). They contend, however, that the *Virginia Bankshares* analysis of causation applies. They support this contention by citing *Howing I*, in which, relying on the fact that § 13(e) was patterned after § 14(a) and parallels its language, this court concluded that, just as one exists under § 14(a), an implied private right of action exists under § 13(e). The Defendants argue, therefore, that the Supreme Court's § 14(a) causation analysis applies to private actions arising under § 13(e).

The Plaintiffs contend that the *Virginia Bankshares* analytical framework does not apply to § 13(e) claims. They contend that, because Rule 13e–3 imposes special disclosure obligations that are absent under Rule 14a–9, the dangers of speculative, hazy factual issues that concerned the Supreme Court in *Virginia Bankshares* do not arise

---

3. The four dissenters would have approved this theory of causation. *See Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2770–73, 115 L.Ed.2d at 960–63.

4. Justice Kennedy's dissenting opinion, which Justices Marshall, Blackmun, and Stevens joined, also would have accepted the loss-of-state-law-remedy theory of causation. *See Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2773, 115 L.Ed.2d at 963–64.

under § 13(e). They further contend that the raw power of the majority shareholder to approve the transaction—the very power whose abuse created the need for § 13(e) and its unique disclosure requirements—renders the *Virginia Bankshares* analysis of causation inappropriate. If *Virginia Bankshares* means that the causation requirement can never be established when the minority shareholders lack sufficient votes to block the transaction, they argue, then the private right of action under § 13(e) would provide only an illusory sort of protection—protection that is unavailable in the archetype of the situations that § 13(e) governs.

If we interpreted *Virginia Bankshares* as holding that minority shareholders who lack sufficient votes to block a transaction can never establish causation of damages, then we would agree with the Plaintiffs. It would make little sense to hold that the protection of an implied private right of action exists under § 13(e), but that causation can never be established in the case where minority shareholders, who lack sufficient votes to block the transaction, have their greatest need for such protection. We do not, as is explained *infra,* interpret *Virginia Bankshares* so broadly.

Several authorities do appear to have assigned to the *Virginia Bankshares* holding, with respect to causation of damages, such a broad interpretation.[5] This overestimation of the scope of the holding in *Virginia Bankshares* is understandable. Justice Souter's majority opinion at one point frames the issue before the Court in broad terms: "The second issue before us ... is whether causation of damages compensable through the implied private right of action under § 14(a) can be demonstrated by a member of a class of minority share-

holders whose votes are not required by law or corporate bylaw to authorize the transaction giving rise to the claim." *Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2761, 115 L.Ed.2d at 949.

The Court, however, did not actually decide the broad question that it framed. It rejected only the narrow *Schlick* theory. The Court's express refusal to address the merits of the loss-of-state-law-remedy theory is inconsistent with the broader interpretation of the opinion. If minority shareholders who lack sufficient votes to block a transaction could never establish causation, as the Nationwide Defendants contend, it would have made no sense for the Court expressly to refuse to address the merits of the loss-of-state-law-remedy theory. That theory, and indeed, any other the *Virginia Bankshares* plaintiffs could offer, would be without merit.

Thus, we interpret *Virginia Bankshares* more narrowly than do the Defendants. Our narrower interpretation, however, undercuts the Plaintiffs' argument that the *Virginia Bankshares* § 14(a) analytical framework should not apply at all to claims under § 13(e). Given our rejection of the Defendants' contention that *Virginia Bankshares* requires rejection of *all* non-voting theories of causation, the Plaintiffs' complaint that the § 13(e) private action provides only an illusory sort of protection collapses. Because we conclude that non-voting theories of causation can support a § 13(e) claim, minority shareholders with insufficient votes to block a transaction have protection.

While we cannot derive a general standard of causation from *Virginia Bank-*

---

**5.** *See Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416 (D.C.Cir.1992) ("[T]he Court refused to extend the *Borak* section 14(a)/Rule 14a–9 right of action to minority shareholders who lacked the votes needed to block the merger that gave rise to the claim.... Because the complaining shareholders in *Virginia Bankshares* lacked the power to block the merger, the Court allowed no private right of action."); *Scattergood v. Perelman,* 945 F.2d 618, 624–25 (3d Cir.1991) ("[W]hen a majority shareholder of a company pursues a freeze-out merger, the

chain of causation between a pre-merger misrepresentation and the price received under the merger is broken...."); L. Loss, *Fundamentals of Securities Regulation,* 948 (1991 Supp.) ("The analogous question—whether causation of damages could be shown by a member of a minority class of shareholders whose votes were not required by law or corporate bylaw to authorize the corporate action subject to the proxy solicitation—received a negative answer in *Virginia Bankshares v. Sandberg,* 501 U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991).").

*shares,* we can apply the Court's analysis. The Court stated that:

> where a legal structure of private statutory rights has developed without clear indications of congressional intent, the contours of that structure need not be frozen absolutely.... Faced ... with ... a claim for equality in rounding out the scope of an implied private statutory right of action, we look[ ] to policy reasons for deciding where the outer limits of the right should lie.

*Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2764, 115 L.Ed.2d at 953. The Court then subjected the plaintiffs' *Schlick* theory of causation to such a policy analysis and rejected it, concluding that the likelihood of speculative claims and procedural intractability made the adoption of that theory unwise.

### B. Application of *Virginia Bankshares'* Analytical Framework to the Plaintiffs' Theory of Causation

Proceeding from the proposition that the *Virginia Bankshares* analysis of causation applies to this action under § 13(e), and noting the factual similarities of the two cases, the Nationwide Defendants contend that the Plaintiffs cannot demonstrate causation. They contend that, under *Virginia Bankshares,* minority shareholders can never establish causation when a majority shareholder holds sufficient raw voting power to authorize the transaction. The Plaintiffs, in response, distinguish their case from *Virginia Bankshares.* They correctly note that the state-law remedy of appraisal was unavailable to the plaintiffs in *Virginia Bankshares. See Virginia Bankshares,* 501 U.S. at —— n. 14, 111 S.Ct. at 2766 n. 14, 115 L.Ed.2d at 955 n. 14. Such a remedy was, however, available to the minority shareholders of Nationwide Corporation, who are the class Plaintiffs here. *See* Ohio Rev.Code § 1701.85.

### 1. Recognition of the Loss-of-State-Law-Remedy Theory

We must first determine whether the Plaintiffs' loss-of-state-law-remedy theory of causation can support a § 13(e) claim. In *Virginia Bankshares,* four members of the Court concluded that this theory could support a § 14(a) claim. *See Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2773, 115 L.Ed.2d at 963–64 (Kennedy, J., dissenting). The five majority justices refused to consider the theory because they found that the case did not present it.

This case clearly presents the question left unresolved by the majority in *Virginia Bankshares.* We are not, however, completely without guidance in the resolution of this question. In *Virginia Bankshares,* the Court indicated, as we noted *supra,* that we should look to policy reasons to assess the legitimacy of a theory of causation. *See Virginia Bankshares,* 501 U.S. at ——, 111 S.Ct. at 2764, 115 L.Ed.2d at 953. We must, therefore, look first to *Mills v. Electric Auto–Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), to determine what policy considerations motivated the Court to accept the theory of causation presented in that case. We also must look to *Virginia Bankshares* to determine what policy considerations motivated the Court to reject the *Schlick* theory of causation.

In *Mills,* in which some minority votes were needed, the Court indicated that its decision was motivated by its desire to avoid the impracticalities of determining which votes were affected by the misleading proxy solicitation and to resolve doubts in favor of those that the statute was designed to protect. The decision supports, it points out, the fair corporate suffrage that Congress sought, by § 14(a), to require. The policies recognized and relied upon by *Mills* support the Plaintiffs' causation theory.

But the Plaintiffs' causation theory differs from that accepted in *Mills.* In *Mills,* the Court effectively created a conclusive presumption that a materially misleading proxy solicitation affects the outcome of a shareholder vote on the transaction if some minority votes are needed. Such a presumption obviously defies logic when the minority shareholders lack sufficient votes to affect the outcome. In this case, because Nationwide Mutual controlled 85% of

the votes, the misleading proxy solicitation could not have affected the result of the vote. The Plaintiffs, however, contend that a different inference should be made—that the misleading proxy statement was an "essential link" in their decisions not to pursue their appraisal remedies.

*Virginia Bankshares* provides some guidance. The Plaintiffs submit that their loss-of-state-law-remedy theory avoids the dangers of speculation, which caused the *Virginia Bankshares* Court to reject the *Schlick* theory of causation. Clearly, there is an element of speculation involved in the Plaintiffs' theory. It requires an inference that, given full and fair disclosure, members of the Plaintiff class would have (1) voted against the transaction or not voted, thus qualifying for the appraisal remedy; and (2) exercised their appraisal rights within the statutorily prescribed ten-day time limitation. *See* Ohio Rev.Code § 1701.85. This element of speculation, however, appears to us no greater than that involved in *Mills*, where the Court adopted a presumption that, given full and fair disclosure, members of the plaintiff class would have voted against the proposed transaction.

In *Virginia Bankshares*, with reference to the *Schlick* theory of causation that the Court rejected, the Court said:

> Causation would turn on inferences about what the corporate directors would have thought and done without the minority shareholder approval unneeded to authorize action. A subsequently dissatisfied minority shareholder would have virtual license to allege that managerial timidity would have doomed corporate action but for the ostensible approval induced by a misleading statement, and opposing claims of hypothetical diffidence and hypothetical boldness on the part of directors would probably provide enough depositions in the usual case to preclude any judicial resolution short of the credibility judgments that can come only after trial.

*Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2765, 115 L.Ed.2d at 953. The difference between the presumption re-

quired by the *Schlick* theory that the Court rejected in *Virginia Bankshares* and the presumption required by the *Mills* theory that the Court accepted lies in the power to act. In *Mills*, the Court deemed a presumption, with respect to minority shareholder action within the scope of their enforceable rights, likely enough. In *Virginia Bankshares*, however, the Court deemed a presumption, with respect to the possible actions of the involved directors, too speculative. *Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2765, 115 L.Ed.2d at 950. Unlike this rejected *Schlick* theory, the Plaintiffs' loss-of-state-law-remedy theory derives its causal link from the enforceable terms—including the right to appraisal—of the parties' corporate relationship, not from anything so amorphous and speculative as the directors' apprehension of the ill will of the minority shareholders.

The Plaintiffs' loss-of-state-law-remedy theory relies on a presumption that is no more speculative than the presumption made by the Court in *Mills*, and less so than the one rejected by the Court in *Virginia Bankshares*. The presumption concerns likely action by shareholders, and the causal link arises from the enforceable terms of the corporate relationship.

Finally, there is another reason we favor recognition of the Plaintiffs' theory of causation. We previously have indicated our belief that Congress intended that an implied private right of action arise under § 13(e). Having found such congressional intent, we would certainly be hesitant to conclude that Congress also intended that causation could not be demonstrated in any case where the minority shareholders lack sufficient votes to block the transaction. As the Plaintiffs note, this situation arises in the archetypal going-private transaction. Such shareholders are least able to protect their own interests, and they have the greatest need for the protection provided by the private right of action. These shareholders lack even the protection of sufficient numbers to vote down the proposed transaction. We will not deprive them of the protection of § 13(e).

In summary, we draw support for our recognition of the Plaintiffs' theory of causation from several sources. First, three current members of the Supreme Court have indicated their support for the theory, while the remainder of the Court has not determined its merits. Second, if, as the Nationwide Defendants contend, minority shareholders without sufficient voting power to prevent a transaction were categorically unable to demonstrate causation, we believe the Court would have resolved *Virginia Bankshares* on that broader ground. Third, the element of speculation required by the Plaintiffs' theory is no greater than that required by the theory accepted by the Court in *Mills*. Finally, we would be hesitant to hold that Congress intended to provide the protection of an implied right of action, but that causation could never be established in those cases where the minority shareholders, lacking sufficient votes to block the transaction, had their greatest need for such protection.

### 2. Application of the Loss-of-State-Law-Remedy Theory to the Facts of This Case

█ Given our conclusion that the loss of a state-law remedy provides an acceptable theory of causation supportive of a § 13(e) action, we must next decide if, in fact, the Plaintiffs have supported their theory of causation. Under Ohio law, the minority stockholders could have sought appraisal if they had voted against the transaction or had not voted, and then selected appraisal within the statutorily prescribed ten-day time limitation. *See* Ohio Rev.Code § 1701.85. The Nationwide Defendants, however, argue that the record actually refutes these Plaintiffs' claims of causation.

The Defendants base their argument upon the contents of the proxy solicitation and the statements attributed to two of the class Plaintiffs. They claim that, far from misleading the minority shareholders, the proxy solicitation disclosed the pendency of the *Efros* litigation, which was later consolidated with this case. They further note that the proxy solicitation contained a "Summary of Steps in Dissenting Share-

holder Procedure," which explained how to obtain appraisal. Finally, they note that a named Plaintiff, McLellan, admitted he was "aware that under Ohio law with respect to the merger that [he] had appraisal rights as a stockholder of Nationwide Corporation" and that he "decided not to pursue those appraisal rights even though [he] believed that the $42.50 merger price was inadequate." Additionally, the Defendants note that Mr. Hirsch, managing partner of the Howing Company, admitted that he was aware of Howing's appraisal rights, but elected not to pursue them because he was told that "there was already a litigation started as a class action suit," and he concluded that "there was no point in going after" appraisal rights. Thus, the Nationwide Defendants argue, the named Plaintiffs were not misled by the material omissions; they thought the merger price inadequate, but consciously chose to forego their appraisal remedy.

We cannot accept the Defendants' argument. In *Mills*, the Court discussed a requirement of proof of whether a defect in the proxy solicitation actually had a decisive effect on the voting. The Court held:

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

*Mills*, 396 U.S. at 385, 90 S.Ct. at 622. Similarly, to paraphrase the Court, where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between a violation of § 13(e) and the loss of his state-law remedy if, as here, he proves that the proxy solicitation was an essential link in the chain of events that deprived him of his state-law remedy.

Application of the *Mills* presumption in this case provides a strong incentive for issuers to comply with § 13(e) and accords with probable shareholder responses had

there been full and fair disclosure. The Plaintiffs' decisions with respect to appraisal might well have been different had they received the full and fair disclosure to which they were entitled. Although McLellan, and Hirsch of the Howing Company, admit that a strategic decision led them to forego their appraisal remedies and instead pursue this litigation, the Plaintiffs note that, had the Nationwide Defendants provided the information required by Rule 13e–3, an appraisal remedy would have been more attractive. Without the information required by Rule 13e–3, the appraisal remedy is less meaningful. As Justice Kennedy indicated in his dissent in *Virginia Bankshares*, "minority shareholders will be in a better position to protect their interests with full disclosure." *Virginia Bankshares*, 501 U.S. at ——, 111 S.Ct. at 2772, 115 L.Ed.2d at 963 (quoting L. Loss, *Fundamentals of Securities Regulation* 1119–20 (1983)). These interests include the shareholders' interest in arriving at a fair price through an appraisal action.

Rule 13e–3 and § 13(e) embrace Congress' philosophy of full and fair disclosure of all material information in freeze-out transactions. Absent such disclosure, the value of a state-law appraisal remedy declines precipitously. The goal of § 13(e) and Rule 13e–3 is to provide shareholders with all of the information they need to make informed decisions with respect to their investments. Faced with a vote on a proposed merger, and a ten-day window in which they had to exercise or forsake the appraisal remedy, the minority shareholder-Plaintiffs had their greatest need for such disclosure. The Nationwide Defendants' failure to provide such disclosure forced the Plaintiffs to make these pressing, important decisions in an atmosphere of ignorance and confusion.

We hold that, based upon the loss of their appraisal remedy, the Plaintiffs have established causation supportive of their § 13(e) claim.

## IV.

The Defendants make three additional arguments in support of their contention that we should affirm the judgment of the district court. They first argue that *Virginia Bankshares* is inconsistent with the existence of a private right of action under § 13(e). Second, the Defendants argue that *Virginia Bankshares* is inconsistent with our conclusion that the omissions in the proxy solicitation in this case were material facts. Third, they even argue that *Virginia Bankshares* demonstrates the error of our reasoning with respect to the existence of a state-law breach-of-fiduciary-duty claim.[6] After giving thorough consideration to each of these arguments, we find them without merit. We conclude that *Virginia Bankshares* in no way undermines our *Howing I* analysis of the private right of action issue or our *Howing II* analysis of the materiality and state-law breach-of-fiduciary-duty issues.

## V.

The Supreme Court remanded this case for reconsideration in light of *Virginia Bankshares*. From the foregoing analysis, we conclude that the Plaintiffs' loss of their state-law appraisal remedy establishes causation consistent with *Virginia Bankshares*. We also reject the Defendants' other arguments, as indicated *supra*.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for trial.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

Although I substantially agree with Judge Brown's thorough analysis of the *Virginia Bankshares* decision, I must dissent from that portion of the majority opinion which applies that analysis to the facts of this case. I also write separately to express my doubt that Ohio law would

---

**6.** The dissent indicates its discomfort with our continued approval of the claim for breach of fiduciary duty. For the reasons articulated in *Howing II*, we reaffirm our decision that the district court should not have granted summary judgment for the Defendants with respect to this issue. *See Howing II*, 927 F.2d at 267–70.

recognize the plaintiff-shareholders' fiduciary duty claim, when it seeks only additional compensation for their shares.

## I.

Like the majority, I read *Virginia Bankshares* as advancing the possibility that minority shareholders lacking sufficient votes to block a corporate transaction may establish causation for purposes of a section 14(a) suit by showing that the false or misleading proxy statement resulted in the loss of a state remedy. · Assuming that there is indeed an analogous private right of action under section 13(e),[1] I agree that the "lost state remedy" causation theory may be instructive in this case which, like *Virginia Bankshares,* involves minority shareholders' complaints regarding full disclosure in the contested proxy statements. I do not agree, however, that the facts of this case demonstrate an induced forfeiture of the appraisal remedy, and I would therefore decline to allow *Howing* to stand for our circuit's full-fledged endorsement of the "lost remedy" theory.

The majority's adoption of the lost-remedy argument is based on an inference that disclosure of the desired information would have moved the plaintiffs to vote against the transaction (or abstain from voting) and to exercise their appraisal rights within the statutorily prescribed ten-day period. As prior decisions in this case have made clear, however, none of the named plaintiffs voted in favor of the merger. In other words, there can be no suggestion that these plaintiffs were duped by the allegedly misleading proxy statement into voting for the merger on the mistaken belief that the transaction would be in their best interests. In general, a shareholder's failure to vote upon receipt of a defective proxy statement—and a subsequent failure to assert the appraisal rights on time—may just as readily suggest that the dissenting shareholder, aware of the proxy's defects and believing the shares to be worth far

more, intends to challenge those defects and seek damages in a separate action.

That this alternative inference is equally as plausible is demonstrated by the facts of this case. Even before the proxy materials were disseminated, a minority shareholder, Belle Efros, sought to enjoin the merger for, among other things, paying the public shareholders "a grossly inadequate price." Complaint at 6, *Efros v. Nationwide Corporation,* No. C–2–82–1385 (S.D.Ohio). This early *Efros* litigation, with which the present case was eventually consolidated, was then addressed in the proxy materials, which also explained how dissatisfied shareholders may assert their appraisal rights.

Even more · significantly, the named plaintiffs' own admissions refute the inference that the proxy statement induced them to forfeit the appraisal remedy. Plaintiff McClellan conceded that he "elected not to pursue" his appraisal rights even though he believed that the $42.50 merger price was inadequate. Similarly, the managing partner of the Howing Company stated that shortly after he received the proxy, he, in consultation with his broker, decided not to vindicate his dissatisfaction with the price through appraisal but to rely instead on the outcome of the Efros litigation. Further, in arguing the motion for class certification, plaintiffs' counsel stated that they had chosen the more economical route of the class action over individual appraisal actions. The district court's order conditionally certifying the case as a class action essentially confirmed that the appraisal remedy had been considered and deliberately abandoned:

> Although plaintiffs admit that they could have invoked the protections of Ohio's dissenting shareholder's statute ... they have chosen to pursue their claims under the federal securities laws and the common law of Ohio.

Given these undisputed facts, I would decline to find that the plaintiffs here were duped or misled into forfeiting the right to assert their objection to the merger price in

---

**1.** I say "assuming" because, although I joined that part of this court's original opinion in this case which found a private right of action, I

have since had second thoughts and now have serious doubts about that conclusion.

an appraisal action. Thus, this seems to me a poor case for deciding whether this circuit should adopt the "lost state remedy" theory alluded to in *Virginia Bankshares.*

## II.

In addition, I note briefly my discomfort with the majority's continued approval of the claim for breach of fiduciary duty. I understand the Ohio Supreme Court cases of *Armstrong v. Marathon Oil Co.,* 32 Ohio St.3d 397, 513 N.E.2d 776 (1987), and *Stepak v. Schey,* 51 Ohio St.3d 8, 553 N.E.2d 1072 (1990), to mean that while an action for a breach of fiduciary duty may indeed be maintained outside an appraisal proceeding, such action will not be countenanced if it seeks only "to overturn or modify the fair cash value determined in a cash-out merger." *Schey,* 553 N.E.2d at 1074. These two cases, according to a recent Ohio Court of Appeals decision,

> made it clear that a shareholder cannot disguise what is essentially a cause of action for an appraisal of the value of stock by bringing that cause of action under an allegation of breach of fiduciary duty and fraud. The hallmark for determining whether a cause of action is in essence a disguised request for an appraisal of the value of the stock is the damages which are sought for the cause of action.

*Gergely v. Van Voorhis,* No. E–90–36, 1992 WL 15956 at *4, 1992 Ohio App. LEXIS 384 (1992) at *11 (Ohio App. Jan. 31, 1992) (citations omitted). *See also* David L. Kinsella, *Ohio's Newest Claim Outside of an Appraisal for Dissenting Shareholders in a Merger Situation—Breach of Fiduciary Duty,* 16 U. Dayton L.Rev. 773 (1990). It seems clear that what these plaintiffs seek is more money for their shares rather than, for example, the disgorgement of profits or the rescission of the merger.

I would affirm the district court's decision.