**MURRAY & MURRAY CO., L.P.A. PROFIT-SHARING PLAN AND TRUST et al.**

v.

**PERFORMANCE INDUSTRIES, INC. et al.**

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CV–264046.

Decided Feb. 27, 1998.

*Murray & Murray* and *David D. Yeagely,* for plaintiffs.

*Steven D. Williger,* for individual defendants.

*McCarthy, Lebit, Crystal & Haiman Co., L.P.A.,* and *David A. Schaefer,* for Performance defendants.

———————

JOSE A. VILLANUEVA, Judge.

## I. PROCEDURAL HISTORY

The instant declaratory action was filed by plaintiffs Murray & Murray Co., L.P.A. Profit–Sharing Plan & Trust, and Murray & Murray Co., L.P.A. Pension Plan & Trust against Performance Industries, Inc., Performance Holdings, Inc., Joe Hrudka, Tom Hrudka, and Howard Gardner (hereinafter "individual defen-

dants"). The complaint asserts claims for fraud against the individual defendants. Plaintiffs accused the individual defendants, who were former or present officers of Performance Industries, Inc. at the time in question, of self-dealing in negotiating a sale of Performance corporate assets to another company. The complaint also seeks a determination that Cuyahoga County is the proper location for the conduct of fair cash value appraisal proceedings initiated pursuant to R.C. 1701.85 and a determination that there be no necessity of placing legends on Performance stock certificates owned by plaintiffs during the pendency of any R.C. 1701.85 appraisal proceedings.

At the time of the filing of the instant action, plaintiffs, along with numerous other dissenting shareholders, had already filed and had pending an action titled *Performance Industries, Inc., f.k.a. Mr. Gasket Company, Inc., an Ohio Corporation v. Ecco Sales, Inc. Defined Benefit Plan et al.*, case No. CV 94–00235 in the Superior Court of Arizona in the County of Maricopa. That action, commonly referred to as an appraisal action, was filed pursuant to R.C. 1701.85 on behalf of dissenting shareholders and demanded a determination of the fair cash value of shares incident to the sale of assets to Walker Manufacturing Company by Performance Industries, Inc.

As part of their litigation strategy in the Cuyahoga County case, plaintiffs sought a determination that Cuyahoga County had proper venue and jurisdiction over the Arizona appraisal action so that issues related thereto could instead be litigated in this court. Defendants responded by filing motions to dismiss, asserting that the Arizona court had acquired proper jurisdiction over the appraisal action. Defendants alleged that although the instant action is styled as a declaratory action for fraud and other relief, the essential claims being made by plaintiffs were claims that related to the value of their stock, matters which the Arizona appraisal action could adequately address. Defendants also raised various other substantive and procedural objections to the complaint filed by plaintiffs.

Thereafter, and subsequent to extensive discussion with the parties at pretrial, this court stayed discovery and other proceedings pending further developments in the already pending Arizona appraisal action. Defendants' motion to dismiss as well as other subsequently filed motions have remained pending. It having recently come to the attention of this court that the Arizona case has not been resolved and that it has apparently been placed on some form of inactive status by the Maricopa County Superior Court, the stay in the instant case is hereby lifted and the court will enter rulings on all pending motions.

Currently pending before the court are the following motions and/or pleadings:

• Defendants Performance Industries, Inc. and Performance Holding, Inc.'s (hereinafter "Performance defendants") *Motion to Dismiss;*

- Individual defendants Joe Hrudka, Tom Hrudka, and Howard Gardner's *Motion to Dismiss;*

- Performance defendants' *Supplemental Memorandum in Support of Motion to Dismiss;*

- Plaintiffs' *Motion for Partial Summary Judgment and Memorandum In Support and Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss and Memorandum in Support of Partial Summary Judgment in Turn of the Plaintiffs;*

- Individual defendants Joe and Tom Hrudka and Howard Gardner's *Supplemental Memorandum in Support of Motion to Dismiss;*

- Individual defendants Joe and Tom Hrudka and Howard Gardner's *Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment;*

- Performance defendants' *Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment;*

- Plaintiffs' *Affidavit of Dennis E. Murray, Sr. in Support of Motion of Plaintiffs for Partial Summary Judgment;* and

- Individual defendants Hrudkas and Gardner's *Supplemental Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment.*

For the reasons which are set forth below, the court grants defendant Performance Industries, Inc.'s motion to dismiss, grants the individual defendants Joe Hrudka, Tom Hrudka, and Howard Gardner's motion to dismiss, and denies plaintiffs' motion for partial summary judgment.

## II. DISCUSSION

In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must interpret all material allegations in the complaint as true and taken as admitted. *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 531 N.E.2d 318. Only where such facts would under no circumstances support recovery can a motion to dismiss be granted. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753.

## A. FACTS AND ALLEGATIONS

Defendant Joe Hrudka is Chairman of the Board of Performance and resides in Arizona. Defendant Tom Hrudka is a former director and officer of Performance. Defendant Howard Gardner is a former director. Gardner is an Ohio resident.

A November 8, 1993 "Notice to Shareholders of Meeting" and accompanying "Proxy Statement" sought shareholder approval of two transactions: (1) an asset sale (hereinafter the "Walker transaction") and (2) a bankruptcy proceeding that occurred previously in 1991 (hereinafter the "Eischlin transaction"). The plaintiffs aver based upon information and belief that the Eischlin transaction is similar to the Walker transaction.

The notice to shareholders of the vote included notification of shareholders' rights to dissent from the sale and receive fair cash value as provided in R.C. 1701.85. The notice indicated that an action for cash value must be brought in Maricopa County, Arizona, which the defendants claimed as the principal office location for Performance. On January 6, 1994, plaintiffs filed a complaint in Maricopa County requesting determination of fair cash value. R.C. 1701.85 mandates the location of the proceeding as the "court of common pleas in which the principal office of the corporation * * * is located."

Plaintiffs bring the within Ohio action (a) to prevent alleged breach of fiduciary duties in sales which are subject to shareholder approval, and (b) to prevent sales which are not subject to shareholder approval and which may or may not be addressed in the proxy.

Plaintiffs allege that disclosures regarding the transactions/sales referred to the Proxy Statement are so materially misleading, false, or incomplete as to prohibit shareholders from making a fully informed decision. They allege that the individual defendants breached their fiduciary duties to plaintiffs, including the duty of candor and the duty to provide complete information. Plaintiffs also allege that the individual defendants' actions amount to self-dealing, resulting in large sums of money being channeled from Performance to the individual defendants via the noncompetition and/or consulting agreements which were part of the above transactions.

The Eischlin transaction derives from a 1991 bankruptcy of Performance (then known as "Mr. Gasket"). As part of the court-approved bankruptcy plan, Mr. Gasket sold off several divisions. One such sale was to Eischlin, Incorporated. The Eischlin transaction involved noncompetition agreements with defendants Joe Hrudka ($200,000 dollars on signing, and $1.3 million dollars paid over four years in monthly installments) and defendant Howard Gardner ($200,000 dollars on signing and $600,000 dollars over four years in monthly installments). Plaintiffs did not challenge that plan in the bankruptcy proceedings, even though they were parties in interest.

Plaintiffs allege that the Walker transaction involved similar noncompetition agreements, though with different levels of compensation (payments of $500,000 each to Howard Gardner and Tom Hrudka and of $1 million dollars to Joe Hrudka), and a five-year consulting arrangement of twenty days per year with

payment for travel and expenses. An additional term included a fifteen-year noncompetition agreement regarding the sale or manufacture of exhaust systems products in North America.

Defendants negotiated the sales with Eischlin and Walker and made the noncompetition agreements conditions precedent to the sale of Performance assets. Plaintiffs seek declarations that all consulting agreements and noncompetition agreements associated with the transactions be declared invalid, null, and void. Plaintiffs complain that the agreements are flawed in that (1) they are "front end loaded"; (2) consultants' time appears limited; (3) there is no legal recourse for Walker if the consultants prove unable to perform due to death or mental/physical incapacity; (4) the scope of noncompetition clauses is overly narrow and does not correspond to Performance's business or to the expertise of the individual defendants; and (5) the payments made under the noncompetition agreements are in reality part and parcel of assets of Performance. Plaintiffs claim that defendants are diverting a portion of Performance's assets to themselves via the noncompetition agreements. Plaintiffs allege that in exchange for the above, defendants discounted the price of the assets sold to Walker and Eischlin.

Plaintiffs claim such noncompetition and consulting agreements with Walker and/or Eischlin should have been part and parcel of the bargain as incident to defendants' fiduciary duties to Performance. They claim that defendants' expertise is an asset/opportunity of the corporation that defendants have diverted for their own profit.

Plaintiffs further argue that because Performance had employment contracts with the individual defendants, those contracts should be declared to contain confidentiality requirements regarding corporate knowledge and expertise as an asset of Performance, not its employees.

Plaintiffs claim that in the Walker transaction the consulting fees ($2 million) are approximately twenty percent of Performance's value ($10 million). As for the Eischlin transaction, plaintiffs aver based on information and belief that it is similar to the Walker transaction. Plaintiffs also claim that defendant Gardner is not an expert in the topic for which the consulting/noncompetition agreement is made for $2.3 million dollars. They claim that Gardner, who is a C.P.A., has not devoted full-time attention to the affairs of Performance. Thus, plaintiffs claim that the individual defendants should have been required to enter severance packages with Performance along with the option to assign such rights to successors of Performance, and plaintiffs argue that this court should declare that such terms apply. Because the individual defendants were previously paid bonuses, etc. for their expertise, plaintiffs assert that their expertise is now an asset of Performance.

Plaintiffs claim that the net result of these transactions is that the board of directors for Performance have ceded to the controlling shareholders of Performance their authority to negotiate and structure the Eischlin and Walker transactions. As a result, argue plaintiffs, the board of directors acted without adequate knowledge, independence, or interest.

Plaintiffs' causes of action include:

FIRST CAUSE OF ACTION: The individual defendants' actions breached their fiduciary duties to plaintiffs and constitute intentional and deceptive behavior showing actual malice and/or egregious fraud;

SECOND CAUSE OF ACTION: The Arizona appraisal action violates plaintiffs' right to procedural due process because Arizona is not the appropriate forum for the appraisal action under R.C. Chapter 1701;

THIRD CAUSE OF ACTION: There is no need to place "legends" on stock certificates at issue, owned by the plaintiffs, because they were not issued prior to the commencement of the fair cash value proceedings as delineated in R.C. Chapter 1701.

Plaintiffs request declaratory judgments as to each of the three causes of action, as well as attorney fees and costs of this action.

## B. DEFENDANTS' MOTIONS TO DISMISS

Both the individual defendants and the Performance defendants move to dismiss plaintiffs' action, arguing that it is improperly brought and that plaintiffs' claims are actually focused upon the value of Performance stock. Therefore, argue defendants, the Arizona appraisal action is the appropriate forum for resolution of the claims, and the appropriate parties are all dissenting shareholders who have requested the appraisal in Arizona.

1. R.C. 1701.85 Provides Exclusive Remedy of Dissenting Shareholder Who is Attempting to Modify the Fair Cash Value of Stock

Plaintiffs cite *Adair v. Wozniak* (1986), 23 Ohio St.3d 174, 23 OBR 339, 492 N.E.2d 426, for the proposition that this action, although not brought as a derivative action on behalf of all shareholders of the corporation under Civ.R. 23.1, is proper because the individual defendants (as officers) owe a fiduciary duty *directly* to plaintiffs as shareholders.

Additionally, plaintiffs attempt to distinguish that part of *Adair*'s holding that states that as a general rule wrongs committed against a corporation must be redressed in a derivative suit. Plaintiffs specifically attempt to distinguish the *Adair* court's rationale based on a factual distinction from the case *sub judice*.

In *Adair*, third parties (a lending institution and two individuals) were alleged to have committed a fraud against the shareholder/plaintiffs' corporation (Houk Machine Co., Inc.) by conspiring to defraud the corporation of personal property in connection with the sale and leaseback of its equipment. *Adair*, 23 Ohio St.3d at 175, 23 OBR at 339–340, 492 N.E.2d at 427. The corporation through its officer John Houk accepted an offer from one of the defendants to obtain funds via two loans from one lending institution to pay off the corporation's debts to another lending institution. The proposal also included the securing of additional working capital for the corporation in the second loan. Thereafter, and prior to closing the first loan, a defendant informed the corporation's officer that as part of the transaction the lending institution required a bill of sale from the corporation to the two individual defendants regarding certain corporate equipment. That same defendant further proposed a sale-leaseback arrangement regarding the equipment until the second loan was secured. The corporation accepted this arrangement, transferred the bill of sale, and signed the lease agreement. The two individual defendants were paid large fees for securing both loans; however, the second loan was never obtained. The burden of the lease agreement and worsening financial conditions ultimately resulted in the corporation's filing for bankruptcy. *Id.* Subsequently, the plaintiffs/shareholders and their spouses sued for damages, including loss of compensation, potential and real liability for personal guarantees of loans and corporate taxes, loss of loans to the company, and mental anguish.

In deciding that the plaintiff/shareholders in *Adair* could maintain certain claims against the defendants, the court initiated its analysis with a determination "whether the pleadings state injury to the plaintiffs upon *an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole.*" (Emphasis added.) *Id.* at 176, 23 OBR at 341, 492 N.E.2d at 428. Plaintiffs contended that their personal liability on corporate obligations constituted a distinct injury from that suffered by other shareholders. The court rejected this argument, stating:

"Plaintiffs do not allege that they transacted business with the defendants in their *individual capacities.* * * * The overwhelming weight of authority holds that wrongful actions by third parties impairing the capital position of the corporation give rise to no right of action to the shareholders as individuals for damages where there is no violation of a duty owed directly to the shareholders." *Adair* at 177, 23 OBR at 341–342, 492 N.E.2d at 428–429.

In distinguishing the *Adair* plaintiffs from those for which courts had previously found such a duty directly to shareholders as individuals, the court cited and distinguished *Buschmann v. Professional Men's Assn.* (C.A.7, 1969), 405 F.2d 659, and *Sacks v. Am. Fletcher Natl. Bank & Trust Co.* (1972), 258 Ind. 189, 279

N.E.2d 807, in which a duty owed to plaintiffs was found because the plaintiffs in those cases had alleged a harm "different in kind from that suffered by the corporation and [arising] from the plaintiffs' *direct contractual relationship with the defendants.*" (Emphasis added.) *Id.*

The *Adair* court's reasoning resonates accurately when applied to the case *sub judice.* Plaintiffs herein make claims of damage as shareholders in Performance. They argue that the individual defendants herein owe them a duty directly as corporate officers. However, this argument goes beyond the reasoning of *Adair.* The Supreme Court noted in *Adair*:

"No authority has been cited or found to support the position that the wrongful acts of *third parties* which impair the capital position of the corporation, to the indirect injury of the shareholders as a whole, give the shareholders an individual right of action for damages." (Emphasis added.) *Id.*

Plaintiffs herein attempt to expand that aspect of *Adair*'s holding defining a direct duty based on an explicit *contractual* relationship to apply to a direct *fiduciary* duty owed by corporate officers to corporate shareholders. This was not the intent of the *Adair* court's holding. To the contrary, where plaintiffs allege that actions of fiduciaries have directly affected a corporation's value and thereby impaired shareholders' stock value, the appropriate action is a derivative suit brought on behalf of shareholders *as shareholders.*

Finally, to the extent that the *Adair* case was based on outside third parties' attempts to defraud the corporation by causing corporate officers to "sign off" on asset transactions, it is factually distinguishable from the case *sub judice.* The cause of action herein involves complaints about the conduct of corporate officers. That is, the controversy is confined to corporate decisions by corporate officers within the scope of their duties as officers. Therefore, distinguishing the case *sub judice* from *Adair* is less critical to a decision than is focusing on the context herein as a controversy within the corporate walls of Performance. In that regard, the case *sub judice* lends itself more logically to a derivative action brought on behalf of the corporation itself.

Appraisal proceedings under R.C. 1701.85 are the exclusive method for recompensing shareholders dissatisfied with price. *Armstrong v. Marathon Oil Co.* (1987), 32 Ohio St.3d 397, 407–413, 513 N.E.2d 776, 785–791. Plaintiffs in the case *sub judice* exercised their dissenting voter rights under R.C. 1701.85 prior to commencement of this action. A remedy beyond the statutory appraisal procedure is not available where the shareholder's objection is essentially a complaint regarding the price that he received for his shares. *Stepak v. Schey* (1990), 51 Ohio St.3d 8, 11, 553 N.E.2d 1072, 1075–1076.

■ The consulting and noncompetition agreements, plaintiffs complain, diverted assets from Performance to the individual defendants. Plaintiffs simply want the money to be channeled back to Performance. They claim that they are injured by "losing hundreds of thousands of dollars arising from the sales of certain assets" as a result of the two transactions of which they complain. Where plaintiffs' claims are really focused on the subject of the statute (*i.e.*, stock value), the purpose of the statutory appraisal mechanism (to channel all claims for more money into one proceeding) should be paramount.

Plaintiffs are really asserting a claim for corporate waste but have averred it as fraud to avoid the appraisal proceeding. Such actions may be brought only by the corporation in a derivative suit, not by individual shareholders. *Adair*, 23 Ohio St.3d at 175, 23 OBR at 339–340, 492 N.E.2d at 427. When plaintiffs fail to show that they are injured in a way different from other shareholders they have no independent cause of action. The cause of action accrues to the corporation, not the shareholders, even though in a real sense harm may well be sustained by the shareholders as a result of reduced earnings. *Id.* at 178, 23 OBR at 342, 492 N.E.2d at 429.

Under R.C. 1701.85(E), "all other rights accruing from such shares including voting and dividend or distribution rights, are suspended." Even though plaintiffs filed their complaint directly, they allege that it is Performance (the corporation) that will be injured should the individual defendants receive payments under the agreements. Yet plaintiffs make no claim of direct or unique injury to themselves. In addition, even assuming that plaintiffs are correct in arguing that this action should be brought in Ohio rather than Arizona, it has been brought improperly in that it is not a derivative action brought on behalf of all shareholders of a corporation. See discussion *infra* at II.C.

2. Plaintiffs' Common–Law Fraud Claims

Plaintiffs' claims regarding breach of fiduciary duties are common-law claims. Under *Armstrong v. Marathon Oil Co.* (1990), 64 Ohio App.3d 753, 582 N.E.2d 1104, actions seeking compensation other than the value of a dissenter's stock may be maintained as a separate cause of action.

In *Stepak, supra,* the Ohio Supreme Court held that actions for breach of fiduciary duty may be maintained outside the appraisal statute. However, the court also held that such claims may not seek to overturn or modify the fair cash value determined in a cash-out merger. In *State ex rel. The Ohio Co. v. Maschari* (1990), 51 Ohio St.3d 18, 553 N.E.2d 1356, the court determined that appraisal was not the exclusive remedy where a trial court issued a ruling implying that breach of fiduciary duty claims had been asserted. *Id.* at 19, 553 N.E.2d at 1358. The court reasoned that the appraisal proceeding was not

intended to displace all other shareholder remedies, including claims for breach of fiduciary duties.

Plaintiffs argue that appraisal is inadequate here because (1) it appraises only assets now remaining (*i.e.,* after the assets sold via the breach are already gone), and (2) plaintiffs are prohibited from becoming parties in the appraisal proceeding (*i.e,* only the corporation is permitted to be a party to that proceeding).

The *Maschari* case notes that the key for determining validity of actions outside the appraisal action is the nature of the conduct allegedly causing damages, not the form of redress itself. In that regard, plaintiffs have alleged conduct the nature of which may indeed give rise to a cause of action outside the appraisal proceeding. However, for the reasons noted above, plaintiffs' action as currently averred on behalf of some, but not all, shareholders of the corporation must fail. Although the court agrees with plaintiffs that actions outside the appraisal action are permitted under Ohio law, the cases cited by plaintiffs involve claims brought by shareholders derivatively or by the corporation itself as plaintiff and are therefore distinguishable from the case *sub judice.* For the aforementioned reasons plaintiffs' arguments must fail.

3. Declaratory Relief Is Inappropriate When It Will Not Terminate the Controversy Between the Parties

■ As between courts of concurrent jurisdiction, the one whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 94, 545 N.E.2d 83, 92–93. In this case, there is already an action pending in Arizona to determine fair cash value of shares held by dissenting shareholders. That action will necessarily determine the fair cash value.

■ Also, declaratory relief is inappropriate where the General Assembly has designed a special statutory proceeding. *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 530 N.E.2d 928. R.C. 1701.85 is a special statutory scheme created by the General Assembly to determine a dissenting shareholder's right to fair cash value. *Armstrong,* 32 Ohio St.3d at 420, 513 N.E.2d at 796–797, Plaintiffs made demand for fair cash value in Arizona, thereby electing to proceed under the statutory remedy in the Arizona action.

■ Under *Fioresi v. State Farm Mut. Ins. Co.* (Hamilton Cty.1985), 26 Ohio App.3d 203, 26 OBR 424, 499 N.E.2d 5, a court may dismiss a complaint for declaratory relief under Civ.R. 12(B)(6) for two reasons: (1) there is no real controversy or justiciable issue between the parties or (2) the declaratory judgment will not terminate the uncertainty or controversy under R.C. 2721.07. As stated in *Fioresi:*

"The practice of summarily terminating actions for declaratory judgments without determining the questions of construction or validity and without declaring 'rights, status, or other legal relations thereunder' cannot be allowed to continue."

 As discussed above, plaintiffs' causes of action as currently averred fail to permit this court to make declaratory findings that would terminate the uncertainty or controversy between the parties. This court finds that the complaint for declaratory relief in the case *sub judice* should be dismissed.

For the reasons discussed above, this court grants the motion to dismiss of the individual defendants. For these same reasons, the court also grants the motion to dismiss of the Performance defendants.

## C. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Subject Matter Jurisdiction Over R.C. 1701.85 Actions

Plaintiffs request partial summary judgment pursuant to Civ.R. 56(A) on the following issue: Whether an appraisal proceeding pursuant to R.C. 1701.85 involving Performance Industries, Inc. and/or Performance Holding, Inc. must be maintained in Ohio courts.

Plaintiffs' motion relates to their second cause of action as stated in the complaint. Plaintiffs argue that statutory construction and interpretation of the Ohio appraisal statute mandates that only Ohio courts have jurisdiction to hear an appraisal action under the statute, even if it is found that Performance maintains its principal office in Arizona. They argue that the Arizona court lacks subject matter jurisdiction and that plaintiffs have no contacts with Arizona. Plaintiffs seek a declaration from this court that defendants' claim that Arizona is the principal office location is not supported.

Plaintiffs further argue that in construing R.C. 1701.85 to reconcile minimum contacts/due process and subject matter jurisdiction, it must be found that the statute requires appraisal actions to be brought in the state of incorporation— Ohio. Plaintiffs cite policy supporting their argument that the state of incorporation should apply the appraisal statute, otherwise, certainty is denied shareholders. Plaintiffs request partial summary judgment on this purely legal issue.

 However, the court's determination above that this action must be brought as a shareholders' derivative action pursuant to Civ.R. 23.1 disposes of this action without the need to reach the issues raised in plaintiffs' motion for partial summary judgment. Additionally, plaintiffs have chosen to file their appraisal action in an Arizona court. They have not therein challenged the jurisdiction of the Arizona court. Nor did plaintiffs seek to enjoin the jurisdiction of the Arizona court prior to filing their appraisal action. It is well settled that a

court has the power to determine its own jurisdiction. *State ex rel. Butler Cty. Bd. of Commrs. v. Butler Cty. Court of Common Pleas* (1978), 54 Ohio St.2d 354, 356, 8 O.O.3d 359, 360, 376 N.E.2d 1343, 1344–1345.

Finally, this court need not reach plaintiffs' arguments in opposition to the application of the doctrine of *res judicata* regarding the previous bankruptcy proceeding relating to the Eischlin transaction, or their claims regarding the legending of stock certificates for purposes of the appraisal proceeding. The court's determination above that this action must be brought as a shareholders' derivative action pursuant to Civ.R. 23.1, rather than as currently averred, disposes of this action without the need to reach these issues.

## III. CONCLUSION

For the foregoing reasons the court hereby finds:

1. This court's previously ordered stay of discovery in this action is lifted;

2. The plaintiffs' motion for partial summary judgment is denied;

2. The Performance defendants' motion to dismiss is granted; and

3. The individual defendants' motion to dismiss is granted.

*Judgment accordingly.*