[Cite as *In re Lubrizol Shareholders Litigation*, 2017-Ohio-622.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: LUBRIZOL SHAREHOLDERS LITIGATION | : | **O P I N I O N** |
| | : | |
| | | **CASE NO. 2016-L-026** |
| | : | |


Civil Appeal from the Lake County Court of Common Pleas, Case No. 2011 CV 000684.

Judgment: Affirmed.


*Jack Landskroner,* Landskroner Grieco Merriman LLC, 1360 West Ninth Street, Suite 200, Cleveland, OH 44113, *Phillip A. Ciano, Andrew S. Goldwasser,* and *Robert A. West, Jr.,* Ciano & Goldwasser, LLP, 1610 Midland Building, 101 West Prospect Avenue, Cleveland, OH 44115, *Juan E. Monteverde,* Monteverde & Associates PC, 350 Fifth Avenue, 59th Floor, New York, NY 10118, *Stephen J. Oddo,* Robbins Arroyo LLP, 60 B Street, Suite 1900, San Diego, CA 92101, and *David A. Knotts* and *David T. Wissbroecker,* Robbins Geller Rudman & Down, LLP, 655 West Broadway, Suite 1900, San Diego, CA 32101 (For Appellants).

*Geoffrey J. Ritts* and *Marjorie P. Duffy,* Jones Day, 901 Lakeside Avenue, Cleveland, OH 44114 (For Appellees).


DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Emilie J. Sair, derivatively on behalf of nominal defendant, The Lubrizol Corporation, appeals the Judgment of the Lake County Court of Common Pleas dismissing the Second Amended Consolidated Derivative and Class Action Complaint for lack of standing. The issues before this court are whether a plaintiff bringing a shareholder derivative action loses standing to maintain the action if

he ceases to hold corporate stock during the pendency of the litigation and whether a plaintiff satisfies the futility exception to Civil Rule 23.1 by claiming that the corporate directors would not take legal action against themselves. For the following reasons, we affirm the decision of the court below.

{¶2} On March 16, 2011, Henry Mandel, on Behalf of Himself and All Others Similarly Situated, and Derivatively on Behalf of The Lubrizol Corporation, filed a Class and Derivative Action in the Lake County Court of Common Pleas against members of Lubrizol's Board of Directors[1], Berkshire Hathaway Inc., Ohio Merger Sub, Inc., and The Lubrizol Corporation as a nominal defendant. The action sought "to enjoin defendants from further breaching their fiduciary duties in pursuit of a sale of the Company at an unfair price through an unfair and self-serving process to Berkshire."

{¶3} On May 10, 2011, the trial court issued a Judgment Entry consolidating *Mandel v. Hambrick*, Case No. 11CV000684, with *Spletter v. Lubrizol*, Case No. 11CV000825, *Sair v. Hambrick*, Case No. 11CV000807, *Jaroslawicz v. Hambrick*, Case No. 11CV000886, and *State-Boston Retirement System v. Hambrick*, Case No. 11CV001006.

{¶4} On October 31, 2011, Plaintiffs Mandel and Sair filed a Second Amended Consolidated Derivative and Class Action Complaint, captioned *In re Lubrizol Shareholder Litigation*.[2] It was alleged that on March 14, 2011, Lubrizol and Berkshire Hathaway announced a Merger Agreement to sell Lubrizol to Berkshire wherein

---

1. Individually identified as James L. Hambrick (Chairman of the Board and Lubrizol's CEO and President), Gordon D. Harnett, Forest J. Farmer, Sr., Dominic J. Pileggi, Robert E. Abernathy, Harriett Tee Taggart, James E. Sweetnam, Phillip C. Wildman, Michael J. Graff, Edward P. Campbell, and N. Mohan Reddy.
2. An initial Consolidated Derivative and Class Action Complaint had been filed on May 27, 2011. The Second Consolidated Complaint did not include Berkshire Hathaway or Ohio Merger Sub as defendants, but added David L. Sokol, an executive at Berkshire Hathaway, as a defendant. On January 30, 2013, Sokol was dismissed as a defendant without prejudice by stipulation of the parties.

"Berkshire would acquire all of the outstanding shares of Lubrizol for $9.7 billion, or $135 per share." On June 9, 2011, Lubrizol shareholders formally approved the acquisition.

{¶5} The Consolidated Complaint raised two causes of action, one a class or direct claim and the other a derivative claim. Both causes of action were for breach of fiduciary duties: the defendants, Lubrizol's Board of Directors, "have violated their fiduciary duties of due care, loyalty, candor, good faith, and independence owed to the public shareholders of the Company and have acted to put their personal interests ahead of the interests of the Company * * * by entering into and completing the Acquisition [of Lubrizol by Berkshire Hathaway] without regard to the fairness of the transaction to Lubrizol shareholders, particularly considering the positive outlook for the Company as a standalone entity."

{¶6} The Consolidated Complaint did not "challenge the specific price of the Acquisition," but sought "monetary damages on behalf of Lubrizol shareholders" based on the defendants' failure "to ensure a fair process and maximization of shareholder value." The Complaint further sought a declaration that the Merger Agreement was unlawful and unenforceable and the rescission thereof.

{¶7} On February 27, 2012, the Lubrizol defendants filed a Motion to Dismiss the Second Amended Consolidated Derivative and Class Action Complaint. Supplemental memoranda and authority were filed on April 27, 2012, September 18, 2013, and June 2, 2014. The defendants sought the dismissal of the first cause of action (the direct claims) on the grounds that the plaintiffs failed to allege any injury "separate and distinct" from that of other shareholders so as to create standing to assert direct or class claims. The defendants similarly sought the dismissal of the second

3

cause of action (the derivative claims) on the grounds that the plaintiffs lacked standing as they no longer owned Lubrizol stock. Further, the defendants claimed the plaintiffs failed to make a pre-suit demand as required by Civil Rule 23.1. Finally, the defendants asserted that all the plaintiffs' claims are barred by the application of the business judgment rule.

{¶8} On March 30, 2012, the plaintiffs filed their Memorandum of Law in Opposition to the Lubrizol Defendants' Motion to Dismiss. Supplemental authority was filed on September 5, 2013.

{¶9} On December 10, 2015, the plaintiffs filed a Suggestion of Death of Henry Mandel.

{¶10} On February 18, 2016, the trial court issued a Judgment Entry, granting the Lubrizol defendants' Motion to Dismiss. With respect to the first cause of action, the court held that "Plaintiffs do not have standing to bring a direct class action claim for breach of fiduciary duty" since they "have brought no allegations which are not common to all of Lubrizol's former shareholders." With respect to the second cause of action, the court held that "Plaintiffs do not have standing to bring a derivative claim because they are not shareholders of the corporation" and because they failed to "make a pre-suit demand and did not show that a pre-suit demand would be futile as is required pursuant to Civ.R. 23.1." With respect to the Lubrizol defendants' argument that the plaintiffs' claims were barred by the business judgment rule, the court declined to rule as such "claims have been rendered moot" on account of "lack [of] standing to bring both a direct action and a derivative action on behalf of the corporation."

{¶11} On March 18, 2016, Sair filed a Notice of Appeal. On appeal, she raises the following assignments of error:

4

**{¶12}** "[1.] The trial court erred in granting Defendants-Appellees' motion to dismiss Plaintiff's Second Cause of Action by determining that Ohio Civ.R. 23.1 imposes a 'continuous ownership' requirement, which would make it impossible for target shareholders in Ohio to prosecute post-close breach of fiduciary duty claims challenging a corporate acquisition."

**{¶13}** "[2.] The trial court erred by granting Defendants-Appellees' motion to dismiss Plaintiff's Second Cause of Action without addressing and sustaining the viability of the substantive claim for breach of fiduciary duty."

**{¶14}** "[3.] The trial court erred in granting Defendants-Appellees' motion to dismiss Plaintiff's Second Cause of Action by holding that Plaintiff did not sufficiently plead derivative demand futility."

**{¶15}** Dismissal of a complaint based on the plaintiff's lack of standing to bring the action is commonly construed as a dismissal for "failure to state a claim upon which relief can be granted." Civ.R. 12(B)(6); *Wilkins v. Harrisburg*, 2015-Ohio-5472, 56 N.E.3d 320, ¶ 39 (10th Dist.). "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

**{¶16}** The standard of review typically applied to dismissals for failure to state a claim is de novo. *Corrado v. Lowe*, 11th Dist. Geauga No. 2014-G-3239, 2015-Ohio-1993, ¶ 22; *also State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Cty. Commrs.*, 2d Dist. Montgomery No. 22664, 2008-Ohio-6542, ¶ 11 ("[w]hen an appellate

5

court is presented with a standing issue, it is generally a question of law, and we therefore apply a de novo standard of review").

{¶17} The assignments of error will be considered out of order.

{¶18} In the first assignment of error, Sair argues the trial court erred in holding that, "in order for the Plaintiffs to bring a derivative claim on behalf of all shareholders of Lubrizol, Plaintiffs must be shareholders." Sair cites the Ohio Civil Rule governing derivative actions by shareholders, which provides: "In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law." Civ.R. 23.1. Sair notes that "the rule contains no requirement that a stockholder own shares throughout the duration of the litigation." Appellant's brief at 11.

{¶19} Sair also cites two Eleventh District cases in support of her position. In *Cantagallo v. Ashtabula Cty. S. & L. Co.*, 11th Dist. Ashtabula No. 1023, 1981 WL 4400 (June 29, 1981), a shareholder filed a derivative suit alleging mismanagement against the board of directors in conducting a merger. The complaint was filed prior to the merger, which occurred during the pendency of the suit. *Id.* at 1. The directors argued on appeal that "[a] shareholder-plaintiff in a derivative case loses his standing to maintain the action if the corporation on whose behalf the claim was made ceases to exist as a result of a merger with another corporation." *Id.* at 6. This court rejected the argument relying on statutory law that, following a corporate merger, "the surviving or new entity is liable for all the obligations of each constituent entity, including liability to

6

dissenting shareholders." R.C. 1701.82(A)(4). This court held that "[a] derivative suit by Cantagallo is a suit on behalf of the corporation and, thus, is a 'claim existing, or action or proceeding pending, by or against' a constituent corporation." *Cantagallo* at 7, citing R.C. 1701.82(A)(4).

{¶20} Although factually similar, *Cantagallo* is not dispositive. The argument considered therein was focused on the fact that the constituent or subsidiary corporation, on whose behalf a derivative claim is brought, ceased to exist following the merger. That question is directly addressed by recourse to R.C. 1701.82, which provides that a corporation's obligations, as well as claims, survive the merger or consolidation. The question of what effect the fact that Cantagallo was no longer a shareholder had on his standing to assert claims on behalf of the subsidiary corporation was neither asked nor addressed.

{¶21} In *Convenient Food Mart Franchising Co. v. Region 3 Advertising Corp.*, 11th Dist. Lake No. 99-L-008, 2000 WL 655441 (May 19, 2000), this court applied Civil Rule 23.1 to a situation where one corporation (Convenient) brought suit against another non-profit corporation (Region 3) of which it was a member, and its officers, inter alia, for breach of fiduciary duties. *Id.* at 1-2. Prior to filing suit, Convenient withdrew as a member of Region 3. The trial court granted summary judgment in favor of Region 3, noting that Convenient "did not have the necessary legal or equitable ownership in Region 3 to maintain its action; that it had withdrawn as a member of Region 3 four months prior to filing suit; and, had not alleged an independent cause of action other than injuries as a member of the corporation." *Id.* at 3.

{¶22} Relying on Civil Rule 23.1, this court reversed. We held that the Rule only requires that a derivative action plaintiff be a shareholder "at the time of the transaction

7

of which he complains," not when the complaint was filed. *Id.* Thus, Convenient "ha[d] standing to bring a derivative complaint against Region 3" and its officers. *Id.*[3]

**{¶23}** As with *Cantagallo*, *Convenient Food Mart* is not dispositive. Convenient was not a shareholder in a merged corporation, but a member of another corporation, both of which continued to exist as independent entities after Convenient's withdrawal. These distinctions are material as to whether Sair's standing to bring a derivative action was forfeited by virtue of her ceasing to be a shareholder.

**{¶24}** Although not expressly stated by the trial court, the rule that plaintiffs bringing derivative claims lose their standing to prosecute those claims if they cease to be shareholders of the corporation on whose behalf suit is brought derives from Delaware corporate law. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 940 (Del.Ch.2008) ("the rule is a bedrock tenet of Delaware law and is adhered to closely"); *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 552 (Del.Ch.2015) ("[w]hen a stockholder wishes to sue derivatively, Delaware common law requires that the stockholder beneficially own an interest in common stock at the time of filing and continuously throughout the litigation").

**{¶25}** As stated by the Delaware Supreme Court: "To have standing to maintain a shareholder derivative suit, a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation." *Kramer v. W. Pacific Industries, Inc.*, 546 A.2d 348, 354 (Del.1988).

---

3. The Lubrizol defendants would distinguish *Convenient Food Mart* on the grounds that, despite withdrawing from Region 3, Convenient continued to assert that it "still had membership rights in the corporation." *Id.* at 3. This claim, whether accurate or not, was immaterial to this court's holding which was wholly based on the fact that Convenient was a member at the time of the alleged misconduct by the defendants.

{¶26} The purpose of the rule, commonly known as the "continuous ownership rule" is "to eliminate abuses associated with a derivative suit." *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del.1984). The logic behind the rule depends on the nature of the derivative suit, wherein the plaintiff sues not on his own behalf, but on behalf of the corporation.

> A shareholder's derivative action is brought by a shareholder in the name of the corporation to enforce a corporate claim. Such a suit is an exception to the usual rule that a corporation's board of directors manages or supervises the management of a corporation. A derivative action allows a shareholder to circumvent a board's refusal to bring a suit on a claim. On the other hand, if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action.

(Footnote omitted.) *Crosby v. Beam*, 47 Ohio St.3d 105, 107, 548 N.E.2d 217 (1989). Since "the shareholders sue in a representative capacity only, any damages recovered in the derivative suit inure directly to the corporation," and "a plaintiff's derivative claim is regarded as a property right belonging to the corporation instead of the shareholder." *Alabama By-Prods. Corp. v. Cede & Co. ex rel. Shearson Lehman Bros., Inc.*, 657 A.2d 254, 265 (Del.1995).

{¶27} Standing, then, for the derivative action plaintiff, is not so much a matter of the plaintiff having a personal stake in the outcome of the controversy as a matter of the plaintiff having an interest in the corporation which justifies the plaintiff's bringing suit on

9

its behalf. When that interest is extinguished, so is the plaintiff's justification for maintaining a derivative action.

**{¶28}** We are aware of no Ohio decision either expressly adopting or rejecting the continuous ownership rule. We decline to adopt it in the present case.

**{¶29}** Bearing in mind the equitable nature of derivative actions, Sair notes a significant distinction between Ohio and Delaware law rendering the adoption of the rule in Ohio inequitable. Under Delaware law, claims for breach of fiduciary duty as are raised here are cognizable as direct action claims: "direct attacks against a given corporate transaction (attacks involving fair dealing or fair price) give complaining shareholders standing to pursue individual actions even after they are cashed-out through the effectuation of a merger." *Kramer*, 546 A.2d at 354.

**{¶30}** Under Ohio law, in contrast, "a director's breach of a fiduciary duty is understood to harm the corporation and, as a result, any resulting damages inure to the corporation" so that "a plaintiff-shareholder is generally required to bring a derivative action, i.e., a lawsuit on behalf of the corporation." *Heaton v. Rohl*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, ¶ 55 (11th Dist.); *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St.3d 377, 379, 658 N.E.2d 1058 (1996) (rejecting the plaintiffs' argument that breach of fiduciary duty claims against corporate directors should be allowed as a direct action in the absence of injury separate and distinct from the corporation: "[i]f any injuries occurred, they occurred to all the other shareholders alike" and "[t]hat is precisely the situation in which derivative actions are required"). In fact, this was the basis on which the trial court dismissed the first cause of action in the Second Consolidated Complaint.

10

**{¶31}** Thus, under Delaware law, former shareholders who are precluded from maintaining a derivative action due to lack of standing retain their right to bring fiduciary claims in direct actions, unlike their counterparts in Ohio. *Kramer* at 354 ("no one would assert that a former owner suing for loss of property through deception or fraud has lost standing to right the wrong that arguably caused the owner to relinquish ownership or possession of the property") (citation omitted). Given these circumstances, the trial court erred in imposing a continuous ownership requirement on Sair.

**{¶32}** The first assignment of error is with merit.

**{¶33}** In the third assignment of error, Sair contends the trial court erroneously concluded that she did not meet the demand requirement of Civil Rule 23.1. According to the Rule, "[t]he complaint shall * * * allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors * * * and the reasons for his failure to obtain the action or for not making the effort." "The demand requirement is essentially a requirement that a shareholder exhaust his intracorporate remedies before going to court with a derivative suit." (Citation omitted.) *Grand Council v. Owens*, 86 Ohio App.3d 215, 221, 620 N.E.2d 234 (10th Dist.1993).

**{¶34}** As noted above, the boards of directors are "charged with the responsibility of making decisions on behalf of the corporation and are the proper parties to bring a suit on behalf of the corporation or, in their business judgment, to forego a lawsuit." *Drage v. Procter & Gamble*, 119 Ohio App.3d 19, 24, 694 N.E.2d 479 (1st Dist.1997). "The shareholders may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so and that refusal is wrongful, fraudulent or arbitrary, or is the result of bad faith or bias on the part of the directors." *Id.*

11

**{¶35}** An exception to the Rule has been created which "permits a shareholder to proceed with an independent suit without making a demand when the shareholder can demonstrate that the demand would have been futile." *Id.* at 25. In this context, "[f]utility means that the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Id.* "[C]ourts have consistently rejected the idea that demand is always futile when the directors are targeted as the wrongdoers in the suit the shareholders wish the corporation to bring; that is, a bare allegation that the directors would not want to sue themselves or each other does not show that demand would be futile." *Id.*; *compare Carlson v. Rabkin*, 152 Ohio App.3d 672, 2003-Ohio-2071, 789 N.E.2d 1122, ¶ 18 (1st Dist.) ("[e]xamples of when a demand would be excused as futile include when all directors are named as wrongdoers and defendants in a suit, when there is self-dealing by the directors such that the directors gain directly from the challenged transactions, or when there is domination of the nondefendant directors by the defendant directors").

**{¶36}** "Demand futility is difficult to establish and is not just a procedural technicality." *Monday v. Meyer*, N.D.Ohio No. 1:10CV1838, 2011 WL 5974664, 4 (Nov. 29, 2011); *In re Ferro Corp. Derivative Litigation*, N.D.Ohio No. 1:04CV1626, 2006 WL 2038659, 5 (Mar. 21, 2006) ("establishing demand futility in Ohio is not an easy task") (cases cited).

**{¶37}** In the present case, we agree with the trial court that Sair did not make a pre-suit demand and failed to demonstrate that such demand would have been futile. Despite having named all Lubrizol directors as defendants, Sair has not shown with any particularity that the directors, with the exception of Lubrizol's President and CEO,

12

James L. Hambrick, were conflicted or otherwise incapable of exercising reasonable business judgment.

{¶38} The Second Consolidated Complaint offers the following in support of its claim of futility: the directors benefited from the wrongdoing; were interested and/or involved in the merger; would be forced to sue themselves; would expose themselves to "further civil actions" if they attempted to remedy the wrongs; are incapable of exercising "independent objective judgment" on account of being, "directly or indirectly, the recipient[s] of remuneration paid by the Company"; and are "dominated and controlled" on account of "their association as directors of the Company and their positions as present or former employees."

{¶39} There is nothing in the Second Consolidated Complaint to substantiate these claims. As noted above, the idea that demand is futile merely because the directors have been identified as wrongdoers has been consistently rejected by the courts. Similarly, the notions that the directors cannot exercise independent business judgment because they receive remuneration from the corporation or because they are directors or employees of the corporation must be rejected as falling far short of demonstrating demand futility.

{¶40} Sair's claims against the directors (Hambrick excepted) is that they violated their fiduciary duties during the merger process by failing to take a more active part in the negotiations and by deferring to Hambrick who, according to the Complaint, did benefit substantially from the terms of the Merger Agreement. It is not sufficient to claim that the directors were "dominated and controlled" without providing some detail as to why this was so. It is not sufficient to claim that the directors "directly benefitted" from their breach of fiduciary duties without explaining what this benefit was. It is not

13

sufficient to claim that the directors would be subject to further civil liability if they attempted to remedy their failure to fulfill their duties without specifying what this liability would be.

{¶41} Broad and vague allegations of futility have consistently been held not to satisfy the demand requirement of Civil Rule 23.1. *See Monday*, 2011 WL 5974664, at 3-7; *Ferro Corp.*, 2006 WL 2038659, at 4-8; *Carlson*, 152 Ohio App.3d 672, 2003-Ohio-2071, 789 N.E.2d 1122, at ¶ 19-22; *Drage*, 119 Ohio App.3d at 26-32, 694 N.E.2d 479; *Doe v. Malkov*, 10th Dist. Franklin No. 02AP-90, 2002-Ohio-7358, ¶ 29-30.

{¶42} The third assignment of error is without merit.

{¶43} We decline to consider Sair's second assignment of error, which faults the trial court for not considering the substance of her claims for breach of fiduciary duty. Our conclusion under the third assignment of error that Sair lacked standing renders this assignment of error moot.

{¶44} Although the trial court erred in concluding Sair lacked standing due to no longer holding shares of corporate stock, it properly concluded that she lacked standing by failing to comply with Civil Rule 23.1. Accordingly, the Judgment of the Lake County Court of Common Pleas, dismissing the Second Consolidated Complaint, is affirmed. Costs to be taxed against the parties equally.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

_____

14

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

{¶45} I concur with the majority's well-reasoned disposition of Sair's first assignment of error. I respectfully dissent regarding its denial of her third assignment of error. I believe the Second Consolidated Complaint contains sufficient factual allegations to establish demand futility for purposes of Civ.R. 12(B)(6).

{¶46} Demand futility can be demonstrated for purposes of Civ.R. 23.1 if the plaintiff pleads facts showing a corporate board of directors was dominated in its decision making by one or more members who opposed the actions desired by the plaintiff. *Drage*, *supra*, at 26; *accord Carlson*, *supra*, at ¶18. The Second Consolidated Complaint contains sufficient factual allegations that the Lubrizol Board was dominated by the company CEO, James L. Hambrick, for purposes of showing demand futility.

{¶47} The Second Consolidated Complaint alleges the Lubrizol board believed the company's stock was undervalued, and that performance evaluations indicated that sustained growth would change this. (Second Consolidated Complaint at ¶44-45.) It alleges the Board was considering other options than a merger with Berkshire Hathaway, such as continuing the company on a standalone basis, or even acquiring competitors. (*Id.* at ¶50, 66.) It alleges the Board was unsatisfied with the offer of $135 per share made by Berkshire Hathaway, and believed that $145 should be offered, but that Mr. Hambrick argued the Board out of this. (*Id.* at ¶71.) It alleges that Mr. Hambrick discouraged the Board from seeking alternative offers for Lubrizol. (*Id.* at ¶82-83.)

{¶48} Fundamentally, the Second Consolidated complaint alleges facts indicating the entire process of deciding whether Lubrizol should continue on its own, or

15

sell itself to another company, was dominated by Mr. Hambrick, and that when the Board disagreed, he would argue the Board into accepting his positions.

{¶49} Self-dealing by a corporate board can demonstrate demand futility under Civ.R. 23.1. *Drage*, *supra*, at 26; *accord Carlson* at ¶18. The Second Consolidated Complaint alleges sufficient facts, which, if accepted as true, indicate potential self-dealing by Mr. Hambrick. It alleges that Berkshire Hathaway promised he would continue as CEO of Lubrizol, at double the salary; that he would have autonomy in running the company; that $15,000,000 in unvested stock options he held would vest as a result of the merger; and that he would receive bonus "performance shares." (Second Consolidated Complaint at ¶79-83.)

{¶50} Thus, accepting as true the allegations that Mr. Hambrick dominated the board, as well as those regarding the benefits he would reap from the merger with Berkshire Hathaway, Sair sufficiently pleaded demand futility in the context of Civ.R. 23.1 and Civ.R. 12(B)(6).

{¶51} I would find merit in Sair's third assignment of error, and analyze her second assignment of error – i.e., whether the trial court should have considered her argument the Board breached its fiduciary duties to the shareholders.

{¶52} I respectfully concur and dissent.

16