[Cite as *Zalvin v. Ayers*, 2020-Ohio-4021.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOEL ZALVIN, | : | APPEAL NO. C-190285 |
| | | TRIAL NO. A-1804888 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ANDREA J. AYERS, | : | |
| CHERYL K. BEEBE, | : | |
| RICHARD R. DEVENUTI, | : | |
| JEFFREY H. FOX, | : | |
| JOSEPH E. GIBBS, | : | |
| JOAN E. HERMAN, | : | |
| ROBERT E. KNOWLING, JR., | : | |
| THOMAS L. MONAHAN, III, | : | |
| ROBERT L. NELSON, | : | |
| and | | |
| CONVERGYS CORP., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 10, 2020

*The Brualdi Law Firm, P.C., Richard B. Brualdi* and *John F. Keating, Jr.*, and *Altick & Corwin Co. L.P.A.* and *Steven E. Bacon*, for Plaintiff-Appellant,

*Dinsmore & Shohl LLP* and *Mark A. Vander Laan*, and *Pillsbury Winthrop Shaw Pittman LLP* and *Bruce A. Ericson*, for Defendants-Appellees.

**ZAYAS, Judge.**

{¶1}    Plaintiff-appellant Joel Zalvin appeals from the judgment of the Hamilton County Court of Common Pleas, which dismissed his second amended complaint.   Defendants-appellees in this case are Convergys Corporation ("Convergys") and nine of its directors ("defendant directors"): Andrea J. Ayers, Cheryl K. Beebe, Richard R. Devenuti, Jeffrey H. Fox, Joseph E. Gibbs, Joan E. Herman, Robert E. Knowling, Jr., Thomas L. Monahan, III, and Robert L. Nelson. Zalvin, on behalf of a class of nominal shareholders, filed a shareholder derivative class action against Convergys and the defendant directors alleging improprieties in the sale of Convergys to Synnex Corporation.   For the following reasons, we affirm the trial court's judgment.

### I.  Facts and Procedural History

{¶2}    In June 2018, the Cincinnati-based Convergys publicly announced its decision to merge with Synnex.  In August 2018, Convergys and Synnex filed with the Securities and Exchange Commission ("SEC") a proxy statement, which was over 300-pages, explaining the merger, and asked their respective shareholders to vote on it.  In September 2018, Zalvin, who owned shares of Convergys' common stock continuously since May 2016, sued for breach of fiduciary duty and failure to disclose.  Zalvin alleged that the defendant directors had conflicts of interest in favor of the transaction and that Convergys's proxy statement was materially deficient. Zalvin moved to enjoin the shareholder vote.

{¶3}    Following a hearing on Zalvin's motion for a preliminary injunction, the motion was denied.  The sale of Convergys to Synnex closed in early October 2018.  For each share they owned, Convergys shareholders received $13.25 cash and 0.1263 shares of Synnex common stock, for a total value of $24.51 at closing.

2

{¶4} In November 2018, Zalvin filed his second amended complaint, adding additional claims regarding the defendant directors' alleged self-dealing and omissions from the proxy statement. Zalvin also complained that the shareholders were deprived of over $2 per share (as they received $24.51 per share rather than $26.66, the high closing price of Convergys stock in 2017), or $600 million collectively, because the defendant directors failed to include a floating exchange ratio in the sale agreement. Zalvin asked the court to, among other things, rescind the sale, award compensatory damages, and order the defendant directors to disgorge the sums paid to them as a result of the sale.

{¶5} Convergys and the defendant directors (collectively, "appellees") filed a motion to dismiss Zalvin's second amended complaint pursuant to Civ.R. 12(B)(1) and 12(B)(6). Appellees argued that the court did not have jurisdiction because Zalvin had failed to bring a claim under R.C. 1701.85, Ohio's appraisal statute, which appellees contended provided the sole relief available to Zalvin for his complaint over an "inadequate price." Appellees argued that Zalvin did not state a claim upon which relief can be granted because the conclusions in Zalvin's second amended complaint were unsupported. And, appellees argued that Zalvin had not properly pleaded all of the requirements of Civ.R. 23.1 (governing shareholder derivative actions) because he did not adequately establish demand futility—a requirement that a shareholder exhaust his intra-corporate remedies before filing a derivative suit. *See In re Lubrizol Shareholders Litigation*, 2017-Ohio-622, 79 N.E.3d 579, ¶ 33 (11th Dist.).

{¶6} In April 2019, the trial court granted appellees' motion to dismiss on all three bases put forth in the motion. Zalvin now appeals, asserting two assignments of error.

## II. Analysis

{¶7} In his first assignment of error, Zalvin argues that the trial court erred in dismissing the complaint with prejudice. Zalvin contends that the trial court's ruling was a decision otherwise than on the merits and thus the trial court should have indicated that it was a dismissal without prejudice. In his second assignment of error, Zalvin argues that the trial court erred in granting appellees' motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6). We address Zalvin's assignments of error out of order.

### Ohio's Appraisal Statute – R.C. 1701.85

{¶8} We first consider the trial court's dismissal of Zalvin's complaint for lack of subject-matter jurisdiction pursuant to Civ.R. 12(B)(1). The trial court concluded that Zalvin did not act in accordance with Ohio's appraisal statute, R.C. 1701.85, and thus the court was without jurisdiction over the subject matter. Appellees maintain, and the trial court agreed, that Zalvin's complaint was in essence a challenge to the value paid for his shares in the cash-out merger and was merely disguised as a complaint for breach of fiduciary duty and failure to disclose. Such an action must be brought under the appraisal statute. *See Stepak v. Schey*, 51 Ohio St.3d 8, 553 N.E.2d 1072, 1075 (1990).

{¶9} "R.C. 1701.85, is designed to provide compensation for those shareholders who dissented from the merger." *Stepak* at 11, citing *Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 513 N.E.2d 776 (1987). "It provides for the payment of fair cash value to a shareholder for his or her shares as of the day prior to the vote of the shareholders." *Id.* "[A]n action for breach of fiduciary duty may be maintained notwithstanding R.C. 1701.85; however, such action may not seek to overturn or modify the fair cash value determined in a cash-out merger." *Stepak* at 10. "A cause of action outside of the appraisal statute will not be recognized 'where

4

the shareholder's objection is essentially a complaint regarding the price which he received for his shares.' " *Smith v. Robbins & Myers, Inc.*, 969 F.Supp.2d 850, 861-862 (S.D.Ohio 2013), quoting *Stepak* at 11. The plaintiff in *Stepak* "did not allege that his shares were undervalued—rather he alleged that he should have received more money for his shares—thus '[s]uch action, merely asking for more money, per *Armstrong* must be brought under the appraisal statute.' " *Smith* at 862, quoting *Stepak* at 11.

{¶10} Here, Zalvin alleges that the shares were in fact undervalued. The direct and derivative breach-of-fiduciary-duty claims challenge the defendant directors' fair dealing and the substantive fairness of the merger process. The second amended complaint alleges that defendant directors breached their fiduciary duties by approving the merger in order to secure personal benefits unrelated to the merits of the transaction. Additionally, the second amended complaint alleges that the defendant directors secured the unfair merger by soliciting shareholder votes with a misleading and materially deficient proxy statement. *See Smith* at 862, citing *Terry v. Carney*, 6th Dist. Ottawa No. OT-94-054, 1995 WL 763971, *6.

{¶11} Accordingly, considering the second amended complaint in the light most favorable to Zalvin, we find that his allegations are not simply disguised attempts to modify the cash value received, and therefore the appraisal statute does not bar this action.[1]

### Dismissal for Failure to State a Claim

{¶12} We next consider the trial court's decision to dismiss Zalvin's second

---

[1] While we acknowledge that the second amended complaint repeatedly refers to complaints of a lower than implied share price and that Convergys shareholders received $2 less per share from the merger, Zalvin also alleges claims that are not based on the cash value of the merger.

amended complaint for the failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6).

{**¶13**} The standard of review applied to dismissals for failure to state a claim is de novo. *Corrado v. Lowe*, 11th Dist. Geauga No. 2014-G-3239, 2015-Ohio-1993, ¶ 22. When considering a Civ.R. 12(B)(6) dismissal, the court must presume that all factual allegations of the complaint are true, and it must make all reasonable inferences in favor of the nonmoving party. It must then appear beyond doubt that the nonmoving party can prove no set of facts entitling it to the requested relief in the complaint. *Avery v. Rossford, Ohio Transp. Improvement Dist.*, 145 Ohio App.3d 155, 164, 762 N.E.2d 388 (6th Dist.2001), citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). However, the court is not required to presume the truth of conclusions in the complaint unsupported by factual allegations. *Guess v. Wilkinson*, 123 Ohio App.3d 430, 434, 704 N.E.2d 328 (10th Dist.1997); *Swint v. Auld*, 1st Dist. Hamilton No. C-080067, 2009-Ohio-6799, ¶ 3; *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Services*, 1st Dist. Hamilton No. C-180662, 2020-Ohio-1580, ¶ 21. Additionally, the court may not rely upon evidence outside of the complaint when considering a Civ.R. 12(B)(6) motion, but "[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 673 N.E.2d 1281 (1997), fn. 1, citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 109, 647 N.E.2d 799 (1995); *see Henkel v. Aschinger*, 167 Ohio Misc.2d 4, 2012-Ohio-423, 962 N.E.2d 395, ¶ 8 (C.P.) (considering proxy statement

referred to in plaintiff's complaint and publicly filed with the SEC in ruling on a motion to dismiss).[2]

{¶14}  Zalvin's second amended complaint alleges four causes of action: two direct claims against the defendant directors individually for breach of fiduciary duty (Count I) and failure to disclose (Count II), and two derivative claims on behalf of Convergys against the defendant directors for breach of fiduciary duty (Count III) and failure to disclose (Count IV).  We will address Counts I and III together and Counts II and IV together, as the same operative facts apply to these respective causes of action.

*Counts I and III – Breach of Fiduciary Duty*

{¶15}  Directors of a corporation owe a fiduciary duty to the corporation and to the corporation's shareholders. R.C. 1701.59(E).  R.C. 1701.59(B) defines a director's fiduciary duties as follows:

> A director shall perform his duties as a director, including his duties as a member of any committee of the directors upon which he may serve, in good faith, in a manner he reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances.

---

[2] The allegations in Zalvin's second amended complaint regarding the defendant directors' actions explicitly refer to Convergys's proxy statement and characterizes the contents of that document. Elsewhere in the complaint, Zalvin directly quotes from the proxy statement. Accordingly, the court takes judicial notice of that public disclosure, which the defendants filed with their motion to dismiss.  *See In re Alloy, Inc.*, No. 5626-VCP, 2011 WL 4863716, *3 (Del.Ch. Oct. 13, 2011) (taking judicial notice of a publicly-disclosed preliminary proxy statement when ruling on motions to dismiss plaintiffs' complaint); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del.2006) ("When a complaint partially quotes or characterizes what a disclosure document says, a defendant is entitled to show the trial court the actual language or the complete context in which it was used [on a motion to dismiss]."); *Solomon v. Armstrong*, 747 A.2d 1098, 1122 (Del.Ch.1999), fn. 72 (taking judicial notice of facts publicly available in SEC disclosures and documents incorporated by reference into the complaint when considering a motion to dismiss).

"The fiduciary relationship between a corporation's directors and the corporation and its shareholders has also been described to include 'a duty of good faith, a duty of loyalty, a duty to refrain from self-dealing and a duty to disclosure.' " *Thompson v. Cent. Ohio Cellular, Inc.*, 93 Ohio App.3d 530, 540-541, 639 N.E.2d 462 (8th Dist.1994), quoting *Wing Leasing, Inc. v. M & B Aviation, Inc.*, 44 Ohio App.3d 178, 181, 542 N.E.2d 671 (1988).

{¶16} "In shareholder actions alleging the breach of fiduciary duties, 'the general rule * * * [is] that directors carry the burden of showing that a transaction is fair and in the best interests of shareholders only after the plaintiff [or aggrieved shareholder] has made a prima facie case showing that the directors have acted in bad faith or without the requisite objectivity.' " *Stepak*, 51 Ohio St.3d at 14, 553 N.E.2d 1072, quoting *Radol v. Thomas*, 772 F.2d 244, 257 (6th Cir.1985); citing *American Law Institute, Principles of Corporate Governance*, Section 4.01, at 6 (protections of the business judgment rule removed only if a challenging party can sustain his burden of showing the director was not acting in good faith or with disinterest, or was not informed as to the subject of his business judgment).

{¶17} Accordingly, directors may not, in breach of their fiduciary duties, act unfairly to the disadvantage of their corporation or its shareholders. For example, "within the bidding process of a corporate takeover or merger, the directors may not rig, control or stifle such bidding to their own advantage." *Stepak* at 14. However, "the directors are not held to a duty to the shareholders to obtain, like an auctioneer, the highest price possible for their shares of the corporation." *Id.*

{¶18} Zalvin's second amended complaint contains three principle arguments for breaches of fiduciary duty. First, he alleges that director and chief executive officer, Andrea J. Ayers, secretly and unilaterally—without board of directors' authorization—pursued a merger to prevent the forfeiture of

approximately $10.1 million of unvested stock upon her planned departure from Convergys. Second, he alleges that the defendant directors "promoted an undervalued transaction to secure personal benefits" as they were "motivated to complete a sale, any sale, no matter how unfavorable to Convergys shareholders and even after Synnex reduced its offer price, to prevent the forfeiture of over $1 million in unvested equity compensation, collectively." And, third, Zalvin alleges that "[t]he decision to enter into the Sale Agreement was also driven by Convergys' directors desire to appease an activist investor and New York based hedge fund, Elliott Management."

{¶19} In regard to his first two arguments, Zalvin's second amended complaint contains conflicting allegations. Zalvin alleges that Ayers's pursuit of a merger was done in secret but concedes in later paragraphs that the proxy statement discloses her initial meetings regarding a possible merger. Zalvin alleges that Ayers's pursuit was unilateral, but the proxy statement reveals that Ayers was accompanied by Convergys's chief financial officer, Andre Valentine, at her first meeting with a potential bidder. The proxy statement also contains a chronological timeline of Ayers's and Convergys's contacts with potential bidders, beginning in early 2017. Zalvin alleges that the vesting of unvested stock upon the sale of Convergys demonstrates a conflict of interest, but concedes in later paragraphs that Ayers's and the other defendant directors' compensation was stock-based compensation, in which their interests were generally aligned with the shareholders. *See In re Micromet, Inc. S'holders Litig.*, C.A. No. 7197-VCP2, 2012 WL 681785, * 13 fn. 64 (Del.Ch. Feb. 29, 2012) (rejecting argument that directors were interested due to vesting of stock options because "the directors' interests would be aligned with the shareholders in seeking the highest price for their shares reasonably available"). Furthermore, the defendant directors' compensation was revealed in detail to the

9

shareholders in the proxy statement and was subject to a separate shareholder vote—i.e., a vote separate and apart from the vote on the merger such that the shareholders could have approved the merger and rejected the defendant directors' compensation. The proxy statement describes in a section entitled, "Interests of Convergys' Directors and Executive Officers in the Mergers," the directors' compensation and their interests in the merger that might differ from the shareholders, and describes their equity compensation over several pages.

{¶20} In regard to Zalvin's third argument, that the decision to proceed with the sale was based on threats from "activist investor" Elliott Management, there are no set of facts to indicate that Elliott Management's role in the merger, regardless of his purported motivations or modus operandi, led to a breach of the defendant directors' fiduciary duties. Allegations that Elliott Management actually threatened a proxy fight, leading the defendant directors to take action adverse to the shareholders, are not within the second amended complaint.

{¶21} In sum, Zalvin's claims against the defendant directors for breaches of fiduciary duty fail to state a claim upon which relief could be granted. Even drawing all reasonable inferences on behalf of Zalvin, he has failed to plead facts under which it is reasonably conceivable that he could recover.

*Counts II and IV – Failure to Disclose*

{¶22} The duty of disclosure applies when a corporation seeks shareholder approval of fundamental corporate changes, such as a merger, "but the adequacy of disclosure is captured under the well-defined concept of materiality." *Henkel*, 167 Ohio Misc.2d 4, 2012-Ohio-423, 962 N.E.2d 395, at ¶ 33.

{¶23} "Securities law regards a fact as material when there is a substantial likelihood that it would have been viewed by a reasonable investor as having significantly altered the total mix of information available." *Id.* at ¶ 34; *see Basic Inc.*

10

*v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). "In setting this standard, the [United States] Supreme Court acknowledged a concern that a lesser standard might bury shareholders in an avalanche of trivial information." *Henkel* at ¶ 34, citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011), and *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448-449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In addition, federal securities law "do[es] not create an affirmative duty to disclose any and all material information. Disclosure is required * * * only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx* at 44 ("Silence, absent a duty to disclose, is not misleading [under federal securities law]").

{¶24} Ohio uses the same approach to materiality in a fraud or breach-of-fiduciary-duty claim. *See Henkel* at ¶ 35, citing *Saxe v. Dlusky*, 10th Dist. Franklin No. 09AP-673, 2010-Ohio-5323, ¶ 51 ("materiality in a fraud claim is essentially the same as the definition used for materiality in a federal securities claim").

{¶25} Accordingly, Convergys and its defendant directors were obligated to convey only material information in connection with the proposed transaction. There was no requirement that it "overload shareholders with meaningless detail or offer all available information that might be deemed helpful by some hypothetical reader." *Henkel* at ¶ 33. For instance, a board of directors is ordinarily not obligated to disclose "the panoply of possible alternatives to a course of action it is proposing, because too much information can be as misleading as too little." *Id.*, citing *In re 3Com Shareholders Litigation*, No. 5067-CC, 2009 WL 5173804, *6 (Del.Ch. Dec. 18, 2009). "Omitted facts are not material simply because they might be helpful." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del.2000). "So long as the proxy statement, viewed in its entirety, sufficiently discloses and explains the matter to be

voted on, the omission or inclusion of a particular fact is generally left to management's business judgment." *In re 3Com* at *1. Furthermore, the law "does not require that a fiduciary disclose its underlying reasons for acting." *In re Sauer-Danfoss, Inc. Shareholders Litigation*, No. 5162-VCL, 2011 WL 2519210, *12 (Del.Ch. May 3, 2011).

{¶26} Zalvin's second amended complaint contains five principle arguments for the failures to disclose, basing his claims on material misrepresentations and omissions. First, he alleges that Ayers "shopped Convergys to Synnex and others without the knowledge or authorization of the Board," which he alleges was not disclosed to shareholders. It is clear from the proxy statement that Ayers did in fact disclose her meetings with potential bidders, but it is omitted whether she first had specific board approval. The proxy statement only describes that around the same time as Ayers's first meeting with potential bidders, "Convergys' board of directors discussed Convergys' near- and long-term strategy and, as part of its ongoing strategic planning, engaged a management consultant to conduct a strategic review of Convergys' business." However, Zalvin does not allege facts to demonstrate the materiality of this omission to the shareholder vote, and we do not see how this omission "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Zalvin merely speculates in a series of questions that allegedly unauthorized discussions affected negotiations in the sale agreement in a way that was not mentioned in an over 300-page, remarkably thorough proxy statement.

{¶27} Second, Zalvin alleges that the proxy statement is silent as to the steps the defendant directors "took to obtain a floating exchange rate for the stock portion of the Sale consideration." But again, the proxy statement does disclose in over ten

pages the negotiations between Convergys and Synnex regarding the steps the defendant directors took to obtain the ratio for the stock. And, Zalvin admits in his complaint that this information was disclosed, he just wants the reasoning for not having a fixed ratio (instead of the floating exchange ratio). While a fiduciary is not required to disclose its underlying reasons for acting, the proxy statement nonetheless discloses the underlying reasoning—in a section entitled, "Convergys' Reasons for the Mergers," stating:

> the collar structure of the consideration, which balances protection of the value of the stock component of the merger consideration in the event of a decline in SYNNEX's stock price during the pendency of the transaction while providing for a fixed exchange ratio in the event of significant increases in SYNNEX's stock price that will not be adjusted for fluctuations in the market price of shares of SYNNEX common stock or Convergys common shares, and will give Convergys shareholders greater certainty as to the number of shares of SYNNEX common stock to be issued to them in the transaction.

Thus, the floating exchange ratio was perceived to be the less risky option through the pending merger.

{¶28} Third, Zalvin alleges that the substance of the defendant directors' interactions with Elliott Management was omitted from the proxy statement, but the proxy statement summarizes a continued dialogue with Elliott Management over the course of three pages. And, as discussed in the preceding section, Zalvin's complaint does not allege that Elliott Management threatened a proxy fight. Zalvin does allege that Convergys entered into a standstill agreement with Elliott Management, but provided no other allegations to demonstrate that further disclosures regarding the standstill agreement would be useful to shareholders for considering the merger. We

13

agree with the court in *In re Novell, Inc. Shareholder Litigation*, 2013 WL 322560, No. 6032-VCN, *13 (Del.Ch. Jan. 3, 2013), which dismissed similar disclosure claims in a complaint regarding Elliott Management, holding:

> As a minority shareholder, Elliott [Management's] conduct does not rise to the level of assuming "actual significance in the deliberations of the reasonable shareholder." The actions of a minority (less than ten percent) holder with no representative on the board simply do not require the disclosures that the Plaintiffs argue would have been material. * * * [T]he Board had no effective control over what Elliott did and, as set forth above, how a perceived fear of Elliott may have influenced the sales process, once initiated, is not backed by any specific factual allegations.

{¶29} Fourth, Zalvin alleges that the proxy statement failed to disclose a conflict of interest regarding a financial advisor and investment bank called Centerview Partners, which was advising Convergys with respect to the fairness of the price to be paid by Synnex. Zalvin alleges that Centerview Partners' employees *might* own Synnex stock, and also that the proxy statement was misleading because it said that Centerview Partners' employees *might* own Synnex stock. In other words, Zalvin's allegations here are speculative. Moreover, it is unclear how the disclosure of more information than already disclosed in the proxy statement regarding the potential conflict of interest of Centerview Partners' employees would have had practical value for a shareholder vote.

{¶30} Finally, Zalvin alleges that the proxy statement does not disclose the Synnex management financial projections and analyst estimates used by Centerview Partners to generate its "fairness opinion"—i.e., the investment bank's endorsement of the fairness of the transaction. However, the proxy statement provided a

14

summary of the financial projections of the merger over the course of three pages. When the board of directors relies on the advice of a financial advisor in making a decision that requires shareholder action, those shareholders "are entitled to receive in the proxy statement a fair *summary* of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely."  (Emphasis added.)  *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 900 (Del.Ch.2016).  There was no requirement that the defendant directors "overload shareholders with meaningless detail or offer all available information that might be deemed helpful by some hypothetical reader." *Henkel*, 167 Ohio Misc.2d 4, 2012-Ohio-423, 962 N.E.2d 395, at ¶ 33.

{¶31}  Zalvin therefore failed to plead the materiality of any of the purported disclosure violations.  Accordingly, Zalvin's claims against the defendant directors for failure to disclose fail to state a claim upon which relief could be granted.

{¶32}  Convergys's proxy statement set out a thorough but straightforward narrative of how the corporation initiated negotiations with Synnex during 2017 and planned to effectuate a merger.  Zalvin essentially ignored that detailed background in mounting his case.  The merger went forward with a majority of shareholders voting for both the merger and the defendant directors' compensation.  That, and similarly important facts, cannot be trumped by unsupported allegations such as the claim that the defendant directors acted in breach of their obligations.

### Dismissal with Prejudice

{¶33}  In his first assignment of error, Zalvin argues that the trial court's ruling was a decision otherwise than on the merits and therefore the dismissal should have been *without* prejudice.  We disagree.

{¶34}  A determination as to whether a dismissal is with or without prejudice rests within the discretion of the trial court.  *Quonset Hut, Inc. v. Ford Motor Co.*, 80

15

Ohio St.3d 46, 47, 684 N.E.2d 319 (1997). However, "[b]ecause a dismissal with prejudice forever bars a plaintiff review of the merits of his claim, appellate 'abuse of discretion' review is heightened when reviewing decisions that forever deny a review of a claim's merits." *Grippi v. Cantagallo*, 11th Dist. Ashtabula No. 2011-A-0054, 2012-Ohio-5589, ¶ 11.

{¶35} Civ.R. 41(B)(1), which governs involuntary dismissals, provides that when a plaintiff fails to comply with the civil rules, the court may dismiss the action, either on the motion of a defendant or on its own motion. Civ.R. 41(B)(3) provides that "any dismissal not provided for in this rule * * * operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise specifies." A dismissal under Civ.R. 12(B)(6) for failure to state a claim is a dismissal under Civ.R. 41(B)(1) for failure to comply with the civil rules. *See Customized Solutions, Inc. v. Yurchyk & Davis, CPA's, Inc.*, 7th Dist. Mahoning No. 03MA38, 2003-Ohio-4881, ¶ 23. Therefore, a dismissal under Civ.R. 12(B)(6) operates as an adjudication on the merits and properly results in a dismissal with prejudice. *See Reasoner v. City of Columbus*, 10th Dist. Franklin No. 04AP-800, 2005-Ohio-468, ¶ 8-10.

{¶36} The trial court's order dismissing Zalvin's second amended complaint under Civ.R. 12(B)(1) and 12(B)(6) did not specify that it was not an adjudication on the merits, but nonetheless pursuant to Civ.R. 41(B)(1) and 41(B)(3), it was an adjudication on the merits. Accordingly, dismissal with prejudice was appropriate.

### Conclusion

{¶37} Based on the foregoing, we conclude that Zalvin's complaint was properly dismissed with prejudice under Civ.R. 12(B)(6) and decline to consider the remaining basis for dismissal. Therefore, we overrule Zalvin's first and second assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.